LOCKEY, APPELLANT, v. CITY OF BOZEMAN, RESPONDENT.

(No. 2,900.)

(Submitted November 16, 1910. Decided December 29, 1910.)

[113 Pac. 286.]

*Cities and Towns—Streets—Acquisition by Prescription—Payment of Taxes—Estoppel.*

Cities and Towns—Streets—Title by Prescription.
   1.  Where a city had continuously and uninterruptedly, as well as adversely under a claim of right, used a strip of land as a public highway for over twenty years, such highway was established by prescription.

Same—Assertion of Ownership—What Insufficient.
   2.  Mere verbal assertion of ownership by the record owner of a strip of land, used adversely under a claim of right by a city for street purposes, with his full knowledge, was not sufficient to prevent the running of the statute under which the city acquired its prescriptive right; to make his protest effectual it was incumbent upon him to assert his claim by some means calculated to interrupt travel over it, or to institute an action to have his rights judicially determined.

Same—Payment of Taxes—Estoppel.
   3.  Defendant city was not estopped to assert that its right to the land in controversy had been acquired by prescription, because of its acceptance of taxes thereon from plaintiff which had been erroneously assessed and collected by officers over whom, under certain statutes, it had no control.

*Appeal from District Court, Gallatin County; E. K. Cheadle, Judge of the Tenth Judicial District, presiding.*

ACTION by Richard Lockey against the City of Bozeman. From a decree for defendant and from order refusing a new trial, plaintiff appeals. Affirmed.

*Messrs. Hartman & Hartman* submitted a brief in behalf of Appellant. *Mr. Walter Hartman* argued the cause orally.

Are the facts stated in the agreed case sufficient to overthrow the assumption of ownership which arises from the legal title being in appellant? The city relies solely upon its title by adverse possession and user for the statutory time, and it must be remembered that this very claim of adverse possession or title by prescription is a recognition, or rather an assumption, of the

fact that the legal title is in the appellant. The mere use of a road by the public for however long will not constitute it a public road. (*Commonwealth* v. *Kelly*, 8 Gratt. 632; *Dickens* v. *Liverpool etc. Co.*, 41 W. Va. 511, 23 S. E. 582; 8 Current Law, p. 43, n. 56.) This court has held that travel generally over an uninclosed lot or parcel of ground is not sufficient to establish any right. (*Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565; *State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361; *Montana O. P. Co.* v. *Butte & Boston C. M. Co.,* 25 Mont. 427, 65 Pac. 420; see, also, *Hamilton Co.* v. *Garrett,* 62 Tex. 602.) In short, to create a street or highway by prescription, there must have been a continued and uninterrupted use by the public under a claim of right. (*Hougham* v. *Harvey,* 40 Iowa, 634; *Cunningham* v. *San Saba Co.,* 1 Tex. Civ. App. 480, 20 S. W. 941; *Cooper* v. *Montera Co.,* 104 Cal. 437, 38 Pac. 106; *Bolton* v. *McShane,* 79 Iowa, 26, 44 N. W. 211; *Terry* v. *McClung,* 104 Va. 599, 52 S. E. 355; *Healey* v. *Atlanta,* 125 Ga. 736, 54 S. E. 749; *Town of Como* v. *Pointer,* 87 Miss. 712, 40 South. 260; *Haan* v. *Meester,* 132 Iowa, 709, 109 N. W. 211; *Terrell* v. *Hart* (Ky.), 90 S. W. 953, 8 Current Law, p. 43.)

Where a city erected a building on its own lot and on a portion of an adjoining lot not owned by it, occupying and maintaining the building for the period of the statute, but assessed the adjoining lot so occupied by its building for taxation to the owner thereof and collected the taxes, it was estopped from claiming title thereto by prescription or adverse possession. (*Hesse* v. *Strode,* 10 Idaho, 250, 77 Pac. 634; see, also, *In re Hand St.,* 52 Hun, 206, 5 N. Y. Supp. 158, 55 Hun, 132, 8 N. Y. Supp. 610.)

Where during the time of the claim of adverse possession, the party claiming title by reason thereof recognizes the dominant title in any way, his claim must fail. (*Hindley* v. *Metropolitan Electric Ry. Co.,* 42 Misc. Rep. 56, 85 N. Y. Supp. 561.)

Where the user upon which a prescriptive title is claimed has been exercised by force or permission, or in the face of protests and in defiance of resistance, a grant cannot be presumed. Resistance by word is sufficient to prevent the presumption of a

grant of an easement.    (*Lehigh Valley R. Co.* v. *McFarlan,* 30 N. J. Eq. 180.)

In behalf of Respondent, *Mr. George Y. Patten* submitted a brief and argued the cause orally.

That a prescriptive right or title to land for use as a highway or street may be acquired by a city in this state is settled by the decisions of this court in the cases of *Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565; *State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361. Most of the cases base the prescriptive right upon the presumption, which is held to be conclusive, of a dedication and acceptance from the user for the statutory period. (28 Cyc. 835, and cases in note 22; *State* v. *Horlacher,* 16 Wash. 325, 47 Pac. 748; *Campau* v. *City of Detroit,* 104 Mich. 562, 62 N. W. 718; *Sheridan* v. *Empire City,* 45 Or. 296, 77 Pac. 393; *City of New Haven* v. *New York etc. R. Co.,* 72 Conn. 225, 44 Atl. 31; *Whittaker* v. *Ferguson,* 16 Utah, 240, 51 Pac. 981; *Schwerdtle* v. *Placer County,* 108 Cal. 589, 41 Pac. 448.) In the case of *Portland etc. Ry. Co.* v. *Clarke County,* 48 Wash. 509, 93 Pac. 1083, it was held that it is immaterial whether the establishment of a road was by dedication or user. In *Mitchell* v. *St. Louis etc. Ry. Co.,* 116 Mo. App. 81, 92 S. W. 111, it was held that although an alley had been legally vacated, its use by the public for ten years, with the knowledge and consent of the city and the owners of abutting lots, constituted it a public alley again.

The change of a highway from a county road to a city street does not affect the rights gained by the public user, nor in any manner make the acquiescence in such use by the claimant less effective as an estoppel against him. (*Raymond* v. *City of Wichita,* 70 Kan. 523, 79 Pac. 323; *City of Ft. Worth* v. *Mansfield,* 44 Tex. Civ. App. 372, 99 S. W. 436.) The building of sidewalks and making of other improvements constituted an assertion by the city of rights of user over the traveled way adverse to the holder of title. (*Raymond* v. *City of Wichita, supra; St. Louis etc. Ry. Co.* v. *Lindell Ry. Co.,* 190 Mo. 246, 88 S. W. 634; *Falter* v. *Packard,* 219 Ill. 356, 76 N. E. 496, 497.)

So far as lot 1 is concerned, it appears that it has been used as a public way since 1864, when it was owned by the United States, so that the public acquired, and has always had, a right to it by virtue of the grant contained in section 2477, United States Revised Statutes, and the acceptance thereof which resulted from the user.  (*City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593; *Murray* v. *City of Butte,* 7 Mont. 61, 14 Pac. 656; see, also, *Smith* v. *Mitchell,* 21 Wash. 536, 75 Am. St. Rep. 858, 58 Pac. 668; *Wells* v. *Pennington,* 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305.)

Where the public has acquired an easement by user in a highway, the listing of the land for taxes and payment thereof by the owner does not affect the rights of the public in the land. (*Campau* v. *City of Detroit,* 104 Mich. 562, 62 N. W. 718; *Sanborn* v. *City of Amarillo,* 42 Tex. Civ. App. 115, 93 S. W. 473; *Gillean* v. *City of Frost,* 25 Tex. Civ. App. 371, 61 S. W. 345; *Rhodes* v. *Town of Brightwood,* 145 Ind. 21, 43 N. E. 942; *Town of San Leandro* v. *Le Breton,* 72 Cal. 170, 13 Pac. 405; *Sheridan* v. *Empire City,* 45 Or. 296, 77 Pac. 393.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Appeals from a decree in favor of defendant and from an order denying plaintiff's motion for a new trial.

This cause was submitted to the court without pleadings under an agreed statement of facts, in pursuance of the provisions of sections 7254–7256, Revised Codes, the purpose of the parties being to obtain a decree quieting the title to lots 1 and 26 in block A in Tracy's addition to the city of Bozeman, Gallatin county, in plaintiff, or adjudging that the public has acquired a prescriptive right to the use of them as a portion of a public highway, according to the court's view of the law or principles of equity as applied to the admitted facts.  It is expressly stipulated that each party claims, as against the other, the benefit of any rule of law applicable, including the statute of limitations, or any matter of estoppel or former adjudication

in his or its favor, and applicable to the facts, as fully as if the controversy were submitted upon formal pleadings. The subjoined plat will serve to elucidate the contentions of the parties:

On June 15, 1872, Wm. H. Tracy obtained a patent from the United States to land, including that covered by the Tracy addition to the city of Bozeman, a portion of which is shown upon the plat, and adjoins the townsite of Bozeman on the west. His settlement had been made thereon in 1864. The original plat of the townsite was put upon record on April 11, 1870. The plat of the Tracy addition was recorded November 22, 1872. Some time in 1869 one Achilles Lamme, being in possession of the land now occupied by the building fronting south on Main street and designated as the National Bank of Gallatin Valley, inclosed it with a fence, the east line of which extended north from Main street near to and to the east of the line between what subsequently turned out to be lots 1 and 2 of block A in the Tracy addition. This remained there, leaving nearly the whole area of lot 1 in Tracy avenue, until 1895. The fence was then removed because of the erection of the building referred to. In 1875 Tracy sued Lamme in the district court of Gallatin county to settle the title to the portion of lot 1 inclosed by the latter. The action resulted in favor of the latter in 1879,

awarding to him title to the inclosed strip. Thereupon Tracy extended the fence north to Mendenhall street, leaving a like area of lot 26 in Tracy avenue. This portion of the fence also remained until 1905, when it was removed because of the construction by the city of the pieces of cement sidewalk along the west side of lots 1 and 26. The city of Bozeman was incorporated under the general laws of the state on March 7, 1883 (Laws Twelfth Territorial Legislative Assembly, p. 13). Prior to that time the control of the streets had been vested in the board of commissioners of the county. Commencing in 1877 and continuing until the latter part of 1881, various steps were taken by the board to condemn lots 1 and 26 for the purpose of widening Tracy avenue, but these were all so irregular that they were ineffective. During the years from 1877 to 1880 the board at various times ordered the sheriff to remove obstructions from the avenue. Finally, at its regular quarterly session in March, 1880, it summarily ordered the avenue to be widened by formally including therein lots 1 and 26. Tracy, the owner, demanded damages, and commissioners, to assess them, were appointed by the board. Pending these proceedings, and on March 15, 1880, the plaintiff purchased the lots from Tracy. The commissioners theretofore appointed made their report to the board at its June session, to the effect that the benefits to the adjacent lots belonging to Tracy, by the opening of the street, were equal to the damages, and their report was adopted. The plaintiff's deed was put upon record on June 15, 1880. At its September session the board ordered the sheriff to remove all obstructions found on Tracy avenue. This the sheriff did, reporting his action to the board at its December term, 1880. These obstructions were fences inclosing the lots or portions thereof, but it does not appear who erected them. The plaintiff then brought an action against the sheriff for trespass. This resulted, on May 2, 1881, in a judgment in favor of plaintiff. On May 7, 1881, the plaintiff caused workmen to enter upon lot 1 and begin the construction of a building thereon. He and they were arrested upon a charge of obstructing a public high-

way. The proceedings were shortly afterward dismissed by the district attorney. At its June session the board of commissioners granted a petition, signed by many residents of Bozeman, to open Tracy avenue from Main to Mendenhall street, by incorporating therein lots 1 and 26. Commissioners appointed to assess the damages reported at the September session that the damages, less benefits, amounted to $400. The report was rejected by the board, for the reason "that after further investigation we find that, according to the original plat of Bozeman city, a portion of lots 1 and 26 is upon said original townsite as Tracy street, and that the entire ground between the Avant Courier Building and the north and south fence on the east side of Lamme's residence property has been continuously used as a public street since 1864." This conclusion of the board ended all further proceedings in the matter on its part. The city, after it was incorporated in 1883, assumed control of the streets. Tracy avenue remained as it then was, until the fence was removed for the purpose of permitting the erection of the bank building and the making of the improvements heretofore noted. The plaintiff made no effort to secure possession of the lots, or to exercise control over them, until 1902 when he attempted, through an employee, to inclose them with a fence, thus obstructing Tracy avenue. The city authorities summarily removed the employee and stopped the work. Nothing further was thereafter done by plaintiff until the submission of this cause on November 28, 1908.

It is expressly agreed that, during all the years since 1864 until the submission of this cause, all that portion of lot 1 to the east of the fence erected by Lamme had been used continuously, exclusively and uninterruptedly by the public as a highway, and that during all the years from 1870, all that portion of lot 26 east of the line of fence erected by Tracy had been used in like manner, with the exception of the interruptions above noted. In 1891 a four-inch water main was laid by the city on Tracy avenue, as indicated on the plat. In 1901 a six-inch sewer main was constructed on Main and Mendenhall streets

and extended south from the latter along lot 26 in 1906, at the expense of the city. In 1905 a special improvement district was created by the city, and cement sidewalks were laid along Tracy avenue on the west side, as indicated. The plaintiff bore no part of the expense of these improvements. While Tracy was the owner of these lots, no taxes were paid upon them to the city by him. Since plaintiff's purchase, in 1880, taxes have regularly been paid by him for the benefit of the city. For some years the plaintiff listed the lots for taxation with the county assessor; for other years the assessor listed them himself. The city of Bozeman has never provided by ordinance for the assessment, equalization or collection of its own taxes, but, under the provisions of the statutes applicable, has by resolution of its council from year to year determined the amount of taxes necessary for administrative purposes, and certified the same to the county treasurer for collection, upon assessments made by the county assessor as the basis for the levy and collection of state and county taxes. From the date of the city's incorporation until the present time, these taxes have been collected by the county treasurer and paid to the treasurer of the city. During that time the plaintiff has paid altogether upon lots 1 and 26, to the state, county and city, taxes to the amount of $1,200, of which the city has received as its share, $400. Since 1883 negotiations have been had from time to time between plaintiff and defendant, to compromise the controversy over the ownership of the lots, the city always asserting that they have by adverse use become a part of Tracy avenue, and the plaintiff denying its claim.

The parties have submitted the controversy upon the theory that title to the portions of the lots lying west of the line of the old fence must be determined upon the same facts as that of the portions lying east of this line, the plaintiff's position being that if he cannot have title quieted in him as to the latter, neither can he as to the former. It is not important to inquire why he has assumed this position. It is doubtless due to the conviction that the portions west of the fence have been lost to

him by adverse use by adjoining lot owners on the west. This is true as to the area of lot 1 lying west of the line, because that was determined by the judgment in the case of *Tracy* v. *Lamme,* rendered in 1879. Doubtless the same or a similar condition exists as to the corresponding portion of lot 26. But be this as it may, the task imposed upon us is to determine the rights of the parties with reference to those portions only which lie to the east of the line.

Under his deed from Tracy, in March, 1880, the plaintiff became vested with such title as Tracy had, and for present purposes it may be assumed that the judgment recovered by the plaintiff against the sheriff of Gallatin county, on May 2, 1881, definitely adjudicated the question of title in his favor. During the same month, however, we find the board of county commissioners asserting the right of control by causing the arrest of the plaintiff and his employees for obstructing the disputed area of lot 1; and in the following September we find it making the declaration that both of the areas had been used as a part of the highway ever since 1864. This was the last definite act of hostility between the parties, until 1902, when the plaintiff attempted to take possession by erecting an inclosure, and was summarily stopped by the authorities of the city, which, in 1883, had become the successor of the board of county commissioners in the control of the streets. During the years intervening, until the submission of this cause, this was the only positive assertion by plaintiff of his title. For twenty-seven years the property constituted a part of the street, and was continuously and uninterruptedly used as a public highway. It was also held adversely under claim of right, because, disregarding the attitude of the board of county commissioners toward it prior to September, 1881, it then asserted the right to its use as a highway, by refusing to pay the plaintiff for it, and by formal declaration that this right had been established by prescription. This amounted to a definite assertion by the public authorities of a right to the use. Therefore, if what had theretofore been done by the board of county commissioners be regarded as

equivocal and insufficient to initiate adverse possession under claim of right, this act on its part did initiate an exclusive use under claim of right, which has continued uninterruptedly until the present time. The period necessary to establish a prescriptive right under the statute in force in 1881, and afterward until the adoption of the Codes of 1895, was five years (Rev. Stats. 1879 [Code Civ. Proc., sec. 29]; Comp. Stats. 1887, Div. 1 [Code Civ. Proc., sec. 29]). Under the provision of the Code of 1895, the period was extended to ten years (Code Civ. Proc. 1895, sec. 483), and has since remained the same. (Rev. Codes, sec. 6432.) Under the provision of the old statute, the adverse use thus initiated ripened into a right by prescription within five years from the close of the proceedings of the board of county commissioners, in September, 1881; and though it be conceded that both parties assumed that the various attempts by the board to condemn the lots prior to that time were so far abortive that the subsequent use by the public was without color of title, yet the use then initiated, continued without question until 1902, more than twenty-one years, and under the admitted facts extended to the whole of the disputed area.

The facts bring this case clearly within the rule recognized generally—that a public highway may be established by prescription, without color of title, by proof of travel over it by the public, as a public highway, for the statutory period. (*State* v. *Auchard*, 22 Mont. 14, 55 Pac. 361; *Montana Ore Pur. Co.* v. *Butte & Boston C. & S. Co.*, 25 Mont. 427, 65 Pac. 420; *Pope* v. *Alexander*, 36 Mont. 82, 92 Pac. 203, 565; *New Haven* v. *New York etc. R. Co.*, 72 Conn. 225, 44 Atl. 31; *Campau* v. *City of Detroit*, 104 Mich. 560, 62 N. W. 718; Elliott on Roads and Streets, sec. 174; 28 Cyc. 835.) The presumption which would otherwise prevail—that the use by the public has, during all the years since 1881, been in subordination to the legal title vested in plaintiff by his deed from Tracy (Rev. Codes, sec. 6435)—is entirely overcome.

The negotiations had with the city from time to time were not effective to prevent the running of the statute, because the city

was all the while exercising exclusive control, and asserting its right to do so. Of this the plaintiff had full knowledge. It was therefore incumbent upon him to assert his right by some means calculated to interrupt or disturb such control and use, or to institute an action to have his right judicially determined. His mere verbal assertion of his claim did not disturb travel by the public, and, in the absence of definite action on his part, was of no avail to prevent the running of the statute. (*Ellsworth* v. *Grand Rapids,* 27 Mich. 250.) The following cases, though differing in their facts, support the conclusion stated: *State* v. *Horlacher,* 16 Wash. 325, 47 Pac. 748; *Sheridan* v. *Empire City,* 45 Or. 296, 77 Pac. 393; *Whittaker* v. *Ferguson,* 16 Utah, 240, 51 Pac. 980; *Portland etc. Ry. Co.* v. *Clarke County,* 48 Wash. 509, 93 Pac. 1083; *Mitchell* v. *St. Louis Ry. Co.,* 116 Mo. App. 81, 92 S. W. 111; *Raymond* v. *City of Wichita,* 70 Kan. 523, 79 Pac. 323; *City of Ft. Worth* v. *Mansfield,* 44 Tex. Civ. App. 372, 99 S. W. 436.

But the plaintiff contends that the receipt by defendant of taxes from year to year was an admission of his right which it is now estopped to deny, or, in any event, that this conduct on its part, together with the other facts admitted, demonstrate that no right to the use of his property has been acquired by prescription. Under the provisions of the statute applicable (Laws 12th Terr. Legislative Assembly, p. 13, secs. 58, 59; Comp. Stats. 1887, Div. 5, secs. 378, 379; Pol. Code 1895, secs. 4862, 4870), the basis of taxation for a city or town has been the valuation made by the county assessor for state and county purposes. The city or town council has had no authority to amend or change the items listed in the roll furnished by him, its office being merely to ascertain the rate of taxation necessary to produce the amount required to meet the expenses of the city or town government, and to certify it to the county treasurer. The duty of collection has thus always been imposed upon this officer for all cities except those of the first class. Under section 4870 of the Political Code of 1895, the city might by ordinance cast this duty upon its own treasurer, but this the defendant never did. Thus it

appears that it had nothing to do with including in the assessment-roll from year to year, as part of plaintiff's property, the lots in controversy. They were included in the list either at the instance of the plaintiff himself, or by the assessor of his own motion, because, doubtless, he found that they had theretofore been so listed. However it was done, the defendant cannot be held to be estopped by levying taxes upon them, for it was not at liberty to pursue any other course. In any event, the admission by the county assessor implied by his listing them —if this can be held such at all—was not an admission by the city or the public, because he had nothing to do with the control of the public highways, and could not thus admit away the rights of the public. (*Ellsworth* v. *Grand Rapids, Campau* v. *City of Detroit, Sheridan* v. *Empire City, supra; San Leandro* v. *Le Breton,* 72 Cal. 170, 13 Pac. 405; *Rhodes* v. *Town of Brightwood,* 145 Ind. 21, 43 N. E. 942; *Gillean* v. *City of Frost,* 25 Tex. Civ. App. 371, 61 S. W. 345; *City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593.)

If the inquiry were whether the plaintiff had dedicated the lots to the use of the public, the payment of taxes by him from year to year would be potent to rebut the conclusion that he had; but the fact that they were paid by the county treasurer and accepted from him by the city treasurer, and expended to maintain the city government, cannot be construed into such an admission of title in plaintiff as to preclude the defendant from asserting the rights of the public. These officers had no more power than the assessor to admit away these rights.

The decree and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.