William **BOCKSTIEGEL** and Christine Bockstiegel, Plaintiffs–Appellants,

v.

**BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY and Paul Zachry,** Defendants–Appellees.

No. 02CA1727.

Colorado Court of Appeals, Div. III.

April 8, 2004.

Certiorari Denied Sept. 7, 2004.*

---

\* Justice KOURLIS would grant as to the following issues:

Whether a public road may be declared under C.R.S. 43-2-201(1)(c) when the current landowner has no actual or constructive knowledge of the existence of the road.

What constitutes "overt action" on the part of a governmental entity sufficient to invoke the "claim of right" element of C.R.S. 43-2-201(1)(c).

326

Peggy Stevens & Associates, P.C., Peggy
E. Stevens, Lakewood, Colorado, for Plain-
tiffs–Appellants.

Joseph A. Fattor, Leadville, Colorado, for Defendant–Appellee Board of County Commissioners of Lake County.

Karsh, Fulton, Gabler & Joseph, PC, Seymour Joseph, Denver, Colorado, for Defendant–Appellee Paul Zachry.

Opinion by Judge ROY.

William and Christine Bockstiegel (landowners) appeal the trial court's judgment concluding that the Old Stagecoach Road (the OSR) is a public road which traverses their property. We affirm.

Landowners own lots 69 and 70 (subject property) together with other lots in the South Arkansas Addition No. 2A of the Mt. Elbert Palmore Ranch Subdivision. They commenced these proceedings to challenge the designation by the Lake County Commissioners of a public right-of-way to the east of, and adjacent to, the Arkansas River (the river). The designation was made at the request of Paul Zachry, who owned property south of the subject property, and was based on the historic use of the OSR commencing in the late nineteenth century and continuing to the present time.

For descriptive purposes, using the United States Geological Survey, Mt. Elbert Quadrangle (1939) map and commencing with the Town of Granite on the south and proceeding north-northwest, the principal features are, in order, Low Pass Gulch, Chaffee and Lake County Line, Spring Creek (S), Holmes Gulch, Two Bit Gulch, Sawmill Gulch, the Hayden Ranch, Spring Creek (N), Union Creek Gulch, Dry Union Gulch, Empire Gulch, Thompson Gulch, Iowa Gulch, California Gulch, and Malta. There are two separate Spring Creeks which we have denominated south and north. The subject property is located between Two Bit Gulch and Saw Mill Gulch just south of the Hayden Ranch. The Zachry property is at the base of Two Bit Gulch. The straight line distance between Granite and Malta is approximately thirteen and one-half miles.

The following facts are essentially undisputed. In the late 1800s, mining activities created tremendous growth in Lake County. Initially, the center of activity was the town of Granite. Subsequently, with the discovery of silver, Leadville supplanted Granite. Access to Leadville from Granite and Buena Vista developed along and adjacent to the river. In 1871, Lake County appropriated funds to construct or maintain a stagecoach road on the east side of the river from Granite to a location designated as Empire Ranch. Empire Ranch is apparently located at, or in the vicinity of, Empire Gulch.

By 1880 a parallel railroad was built on the west side of the river between Granite and Leadville, but the OSR continued to be used by stagecoaches and wagons. In the 1920s, U.S. Highway 24 (the highway) was built on the west side of the river, and the use of the OSR declined substantially. Some segments of the OSR disappeared or were washed out, overgrown, or blocked. Presently there is no continuous road on the east side of the river running from Granite to Leadville. Sections of the OSR, however, remain intact today and are mostly used by local citizens to access recreational activities like fishing, hunting, or hiking. Near Empire Gulch, the highway crosses the river and joins the OSR.

In 1878, a patent was issued for a tract including the subject property, removing it from the public domain. In 1961, the subdivision was platted. The plat depicted a road called Arkansas River Drive along the east bank of the river and across the subject property. It described the road as a public easement extending from the east side of the road to the center of the river. It is not clear whether this easement was accepted by the county. There is no indication of the OSR in the property records whether by purchase, grant, dedication, or reservation, and no indication of it in the chain of title to the subject property, other than, perhaps, standard general exclusions for unrecorded easements and rights-of-way.

In 1978, landowners purchased the subject property and accessed their property and residence from the highway by way of County Road 55 and then south on an access road for about two and one-half miles. It is undisputed that the platted road and the access road are not the same. Landowners assert that they use the access road with the unre-

corded permission from the owners of property through which it passes.

In 1995 and 1996, Zachry purchased property south of the subject property and east of the river, planning to access it by way of the access road. Landowners refused to allow Zachry to drive through their property. Zachry then researched the OSR and presented his findings to the county, requesting that the county declare the access road a public road based on it being a segment of the OSR.

In 1996, the county designated the access road as a public way, pursuant to 43 U.S.C. § 932, without assuming the obligation to maintain it, concluding that it was, in fact, a segment of the OSR. The county then gave Zachry permission to grade the road from the northern boundary of the subject property south to his property. With that permission, Zachry bladed a road across the subject property in the general location of landowners' leach field.

Landowners responded by commencing these proceedings. Following a trial to the court, the court concluded that the OSR was a public road pursuant to §§ 43–1–202, 43–2–201(1)(c), C.R.S.2003, and 43 U.S.C. § 932, that the access road followed the original route of the OSR, and that the OSR traversed the subject property. The court also ordered a hearing to determine the exact route and width, after which it issued an order locating the OSR and defining its width as twelve feet. This appeal followed.

## I.

■ Landowners contend that the trial court erred in concluding that the OSR traversed the subject property. They argue that, instead, the OSR was located on the bluffs above and to the east of the subject property and, therefore, the access road is not a segment of the OSR. We conclude that there is sufficient evidence in the record to support the trial court's findings and conclusions in this regard.

■ An appellate court cannot substitute itself as a finder of fact, and the factual findings of the trial court sitting without a jury are not to be disturbed upon appeal unless clearly erroneous and not supported

by the record. *Gebhardt v. Gebhardt,* 198 Colo. 28, 595 P.2d 1048 (1979). The credibility of the witnesses, the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions drawn from the evidence are all within the province of the trial court, whose findings will not be disturbed on review unless manifestly erroneous. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970). An appellate court, however, is obligated to search the record for evidence to support the findings of fact. *Colo. Mun. League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40 (Colo.1988).

Here, the trial court heard extensive testimony from lay and expert witnesses and received numerous exhibits, including historical maps and aerial photographs. Many of the exhibits show a road along and immediately adjacent to the east bank of the river at the location of landowners' property dating from the late nineteenth century and extending into the mid-twentieth century.

While evidence was presented suggesting that the OSR, or some other historic road, may have existed on the bluffs, there is ample evidence to support the trial court's findings and conclusions that the OSR was along the east bank of the river and traversed the subject property. The trial court reasoned, again with support in the record, that the terrain on the bluffs east of landowners' property would have been too steep for horse and wagon traffic.

## II.

Landowners contend that the evidence was insufficient to support the trial court's conclusion that the road became a public road pursuant to §§ 43–2–201(1)(c), 43–1–202, and 43 U.S.C. § 932. We disagree.

Because we conclude that a public road exists pursuant to § 43–2–201(1)(c), we need not address the other statutes. Our analysis, therefore, begins with the removal of the subject property as a part of a larger parcel from the public domain.

■ Section 43–2–201(1)(c) states: "All roads over private lands that have been used adversely without interruption or ob-

jection on the part of the owners of such lands for twenty consecutive years" are declared public roads. A party claiming a public road by adverse use under § 43–2–201(1)(c) bears the burden of proving by a preponderance of the evidence that (1) the public used the road under a claim of right; (2) the public used the road in a manner adverse to the landowner's property interest; (3) such use has been without interruption for the statutory period of twenty years; and (4) the landowner had actual or implied knowledge of the use and made no objection. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402 (Colo.2004)(clarifying that adversity and claim of right constitute separate requirements); *Bd. of County Comm'rs v. Flickinger*, 687 P.2d 975 (Colo. 1984); *State v. Cyphers*, 74 P.3d 447 (Colo. App.2003); *Littlefield v. Bamberger*, 32 P.3d 615 (Colo.App.2001).

Here, the trial court concluded that the OSR became a public road pursuant to § 43–2–201(1)(c) by the 1920s because, by that time, the public used the OSR, under a claim of right, adversely and without interruption or objection for at least twenty consecutive years subsequent to 1878. Once the OSR became a public road, it remained so until vacated or abandoned. *See Bd. of County Comm'rs v. Kobobel*, 74 P.3d 401 (Colo.App. 2002).

Whether the OSR as it now exists through the subject property is sufficient to establish a public road pursuant to § 43–2–201(1)(c) does not matter here.

## A. Claim of Right

■ To satisfy the claim of right requirement, the party claiming a public road by adverse use must provide evidence that a reasonably diligent landowner would have had notice of the public's intent to create a public right of way. The claiming party must establish that a public entity took some overt action or actions that gave the property owner notice of the public's claim of right. Such an overt act may include showing the road on a public road system map, using the road for mail delivery or school buses, expending public funds for the maintenance or improvement of the road, posting signage indicating a public road, or installing drainage systems for the road. Such an act establishing notice begins the prescriptive period. *McIntyre v. Bd. of County Comm'rs, supra.*

■ Here, it is undisputed that the OSR appeared on several county road maps during, or just after, the prescriptive period. A 1912 county map depicted a road on the east side of the river from south of Two Bit Gulch to Malta. A 1936 map of Lake County prepared by the Colorado State Highway Department as a part of a State–Wide Highway Planning Survey depicted a road on the east side of, and adjacent to, the river from the county line to Empire Gulch where it merged with the highway.

It is also undisputed that the OSR appeared on United States Geological Survey (USGS) maps during, or just after, the prescriptive period. A map of Township 11 South, Range 80 West, of the 6th Principal Meridian prepared in 1877 by the Surveyor General's Office showed a road named "Road from California Gulch to Granite" on the east side of the river from just south of Spring Creek (S) to just south of Spring Creek (N). A map of the Leadville Quadrangle prepared by the USGS in 1891 (reprinted in 1905, 1930, and 1947) based on surveys performed in 1879, 1880, 1881, and 1889 depicted a road on the east side, and adjacent to, the river from Granite to Malta. In addition, USGS maps of the Mt. Elbert Quadrangle prepared in 1935, 1938 (reprinted in 1944), and 1939, based on surveys performed in 1927 and 1935, depicted a road on the east side of, and adjacent to, the river from Granite to Malta. Finally, a map of the Leadville Quadrangle prepared by the Army Corps of Engineers in 1942, based on previous USGS, United States Forest Service, highway, and other maps depicted an unimproved road on the east side of the river from Granite to near Empire Gulch where it merged with the highway.

Further, on October 3, 1871, while the subject property was still in the public domain, the Lake County Commissioners approved resolutions for the construction of a road from Granite to Empire Ranch. The resolutions stated:

On motion of W.H. Jones it is ordered that the sum of One Thousand Dollars be apportioned out of the Road fund to be applied to the building and making a wagon Road between Granite and Empire Ranch in Districts No. 1 and No. 5 on the east side of the river.

. . . .

On Motion of W.H. Jones is authorized to let contracts . . . to make wagon road between Granite and the Empire Ranch on the east side of the river.

There is testimony in the record that Empire Ranch was located near Empire Gulch, which is near the present intersection of the OSR and the highway east of the river.

The trial court did not have the benefit of *McIntyre v. Bd. of County Comm'rs, supra.* However, the trial court stated, relying on *People ex. rel. Mayer v. San Luis Valley Land & Cattle Co.,* 90 Colo. 23, 5 P.2d 873 (1931), that "[t]o establish a highway by prescription the land in question must have been used by the public with the actual or implied knowledge of the landowner, adversely under claim or color of right, and continuously and uninterrupted for the prescribed period." Without the guidance of *McIntyre* the trial court did not separately address "under claim or color of right." However, it concluded with support in the record, that:

the Old Stage Coach Road . . . was used by the public under claim of right for a period of at least twenty consecutive years beginning in 1877, and that such use was presumptively adverse, and with the implied knowledge of the private property owners, without objection or interruption until very recently.

Therefore, there is evidence to support the trial court's conclusion that the OSR was used by the public "under claim or color of right" for the prescribed period established by § 43–2–201(1)(c).

### B. Adverse Use

■ The party asserting the existence of a public road under § 43–2–201(1)(c) must show that the public's use of the road is, or was, adverse and not permissive. That party is aided by a presumption that the character of the use is adverse when the use is shown to have been made for the prescribed period of time. However, where the public use was over land that was vacant, unenclosed, and unoccupied, such use is regarded merely as permissive, not adverse. *Bd. of County Comm'rs v. W.H.I., Inc.,* 992 F.2d 1061 (10th Cir.1993)(applying Colorado law and discussing § 43–2–201(1)(c)).

■ To be adverse, the use should be part of a pattern of general public use and not sporadic in nature. *Bd. of County Comm'rs v. Flickinger, supra; see McIntyre v. Bd. of County Comm'rs, supra.* However, in prescriptive easement cases, intermittent use on a long-term basis satisfied the requirement of adverse use. *Weisiger v. Harbour,* 62 P.3d 1069 (Colo.App.2002). Further, public use to access fishing, hunting, and other recreational activities has satisfied the requirement of adverse use. *See Bd. of County Comm'rs v. Flickinger, supra; Bd. of County Comm'rs v. White & Welch Co.,* 754 P.2d 770 (Colo.App.1988).

■ Here, there is evidence to support the trial court's conclusion that the relevant land was not vacant, unenclosed, and unoccupied, and so the trial court properly applied the presumption of adverse use. The trial court concluded that the land, including landowners' property, was occupied because it was once part of a larger parcel of land known as the Hayden Ranch, which was actively operated until 1950. It is undisputed that the initial private owner of the subject property conveyed it in 1877 to a member of the Hayden family, who owned the property until conveying it in 1911. Also, while the bulk of the ranch was on the west side of the river, testimony indicated that ranching activities occurred on the east side of the river as well. Further, testimony indicated that the OSR passed close to the main ranch stead of the Hayden Ranch and that other individuals lived in the area near the OSR.

■ There is also evidence in the record supporting the trial court's conclusion that the public used the OSR during the prescriptive period from the 1870s to the 1920s as part of a pattern of general public use and not merely sporadic or intermittent use.

During this period, the public used the OSR as the main route of stage, pedestrian, and automobile travel from Granite to Leadville. Unrebutted testimony indicated that even after the highway was constructed in the 1920s, the OSR was used as an alternate route for a significant period of time and was later used to access hunting, fishing, and backcountry areas. There was, therefore, evidence supporting the trial court's findings and conclusions that the public's use of the OSR was adverse.

### III.

■ Landowners further contend that the trial court erred in concluding that no public notice was required for the establishment of the road. They argue that § 43–2–201(1)(c) requires that a landowner have actual or constructive notice in order for a public road through adverse use to be effective against a future owner of the underlying land. We disagree.

■ Interpretation of statutes is a question of law, and appellate courts need not defer to the trial court's interpretation. *People v. Terry*, 791 P.2d 374 (Colo.1990).

While no Colorado state appellate court has specifically addressed this issue, the Tenth Circuit Court of Appeals discussed whether recording statutes apply to § 43–2–201(1)(c) and concluded that § 43–2–201(1)(c) does not require that "public use be based on color of title or properly recorded resolutions." *Bd. of County Comm'rs v. W.H.I., Inc., supra,* 992 F.2d at 1066 (applying Colorado law); *see McIntyre v. Bd. of County Comm'rs, supra* (citing with approval to the quoted language). Other jurisdictions have reached the same conclusion in regard to establishing a public road through adverse use, title by adverse possession, or easements by prescription. *See Jones v. Harmon*, 175 Cal.App.2d 869, 878, 1 Cal.Rptr. 192, 198 (1959)("[i]t is hornbook law that an easement or profit created by prescription is not within the scope of the recording statutes"); *Lockey v. City of Bozeman*, 42 Mont. 387, 113 P. 286, 289 (1910)("a public highway may be established by prescription, without color of title, by proof of travel over it by the public, as a public highway, for the statutory period"); *Crescent Harbor Water Co. v. Lyseng*, 51 Wash.App. 337, 753 P.2d 555 (1988)(title acquired by adverse possession and an easement by prescription are not affected by recording statutes).

Further, we are not persuaded by any of the cases cited by landowners for the proposition that public notice is required to establish a public road pursuant to § 43–2–201(1)(c). *See City of Lakewood v. Mavromatis*, 817 P.2d 90 (Colo.1991)(discussing a dedication statute and condemnation statute); *Lieber v. People*, 33 Colo. 493, 81 P. 270 (1905)(discussing a dedication statute); *Bd. of Comm'rs v. Ingram*, 31 Colo. 319, 73 P. 37 (1903) (discussing a condemnation statute); *Adelson v. Bd. of County Comm'rs*, 875 P.2d 1387 (Colo.App.1993)(discussing a dedication statute). We agree with the trial court that those cases do not discuss whether public notice is required to establish a public road by adverse use pursuant to § 43–2–201(1)(c). Further, we conclude that because the OSR became a public road by adverse use and not by purchase, dedication, grant, or reservation, it is axiomatic that there would be no record notice and that none is required.

Therefore, the trial court properly concluded that no public notice was required either for the establishment of the road or to provide notice to subsequent purchasers.

### IV.

■ Landowners further contend that the trial court erred in determining that the OSR had not been abandoned. They argue that the following acts show abandonment: the building of other roads that access the disputed area; county approval of the subdivision plat without mentioning the OSR; and nonuse of the road by the public. We disagree.

■ Whether abandonment of a public road has occurred is a question of fact committed to the sound discretion of the trial court. *State v. Cyphers, supra.* The burden of establishing abandonment is on the party asserting abandonment. *Heath v. Parker*, 30 P.3d 746 (Colo.App.2000).

Abandonment of a public road requires proof of intent to abandon by official and public acts and proof of nonuse. *Heath v. Parker, supra.* Abandonment by the public will not be implied from nonuse of the road when the public need has not required such a use. *Uhl v. McEndaffer,* 123 Colo. 69, 225 P.2d 839 (1950). Construction of an alternate route, in addition to nonuse, reflects an intention to abandon by an official act. *Koenig v. Gaines,* 165 Colo. 371, 440 P.2d 155 (1968). Occasional use of a public road for access purposes, in the absence of an alternative road, precludes a finding of abandonment. *Heath v. Parker, supra.*

Here, there is support in the record for the conclusion that the construction of the highway was not intended to replace the OSR. Because the highway is on the other side of the river and few bridges cross the river between Granite and Leadville, the OSR remained an important right-of-way to access land on the east side of the river. The public and officials, including BLM managers, continued to use the OSR to access public and private land on the east side of the river inaccessible from the highway. The trial court properly concluded that no alternate route existed for these uses.

In addition, the failure of the subdivision plat to show or mention the OSR is not evidence that the county intended to abandon the OSR. The subdivision plat, while approved by a county agency, was prepared by the subdivider and not the county. The fact that the practice of depicting the OSR on county road maps was discontinued was also not, without more, evidence of an intent to abandon the road. *See Heath v. Parker, supra.*

The record reflects that even after the construction of the railroad and highway, the public continued to use the OSR. Therefore, the trial court properly concluded that the OSR had not been abandoned.

Accordingly, the judgment is affirmed.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Sec. 5(3), and

Judge PICCONE and Judge HUME,** concur.