DEPARTMENT OF TRANSPORTATION, State of Colorado; City of Black Hawk, Colorado; and Silver Dollar Metropolitan District, Petitioners–Appellants,

v.

FIRST PLACE, LLC, Respondent–Appellee.

No. 04CA2263.

Colorado Court of Appeals, Div. I.

May 4, 2006.

As Modified on Denial of Rehearing June 29, 2006.

Certiorari Denied Oct. 23, 2006.

John W. Suthers, Attorney General, Jennifer Mele, Assistant Attorney General, Denver, Colorado, for Petitioner–Appellant Department of Transportation, State of Colorado.

Hayes, Phillips, Hoffmann & Carberry, P.C., Corey Y. Hoffmann, Denver, Colorado, for Petitioner–Appellant City of Black Hawk, Colorado.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Carrie S. Bernstein, Denver, Colorado, for Petitioner–Appellant Silver Dollar Metropolitan District.

Faegre & Benson LLP, Leslie A. Fields, John R. Sperber, Karen L. Brody, Denver, Colorado, for Respondent–Appellee First Place, LLC.

DAILEY, J.

In this eminent domain case, petitioners, Colorado Department of Transportation (CDOT), City of Black Hawk, and Silver

Dollar Metropolitan District, appeal the trial court's judgment awarding respondent, First Place, LLC, $4,057,013 in damages for 1.01 acres of property taken to expand a state highway. We reverse and remand for further proceedings.

The property is, for the most part, steep mountainous terrain, located just north of state highway 119 (SH 119) in Black Hawk. First Place had purchased the property in 1999 from Gilpin County. In 2001, CDOT decided to widen SH 119 northward and approached First Place with an offer to compensate it for the use of its property. CDOT did not, however, offer to compensate First Place for the use of all its property; CDOT claimed an existing right-of-way over much of the property, namely, that part of the property known as parcels 6, 6A, 6B, 14, and 16.

In 1939, the State of Colorado had approved a map identifying the location of the right-of-way for SH 119 referenced as "Colorado State Highway Department Right–of–Way Map for U.S. Works Program Highway Project No. W.P.S.S. 429–B." In the parcels at issue here, the map showed the proposed right-of-way width for SH 119 to be approximately 175 feet.

Later in 1939, first Eugene Mines, Inc., then Eugene Perley and Charles Cox, executed deeds conveying to the County a right-of-way for purposes of building a state highway. The Eugene Mines deed, which affected parcels 6, 6A, and 6B, was titled "Right of Way Deed for U.S.W.P.H. Highway Projects W.P.S.S. 429–A and 429–B[,] State Highway No. 119 across Property Herein Described"; the Perley–Cox deed, which affected parcel 16, was titled "Right of Way Deed for Highway Project U.S.W.P.H. 429–B across Property Herein Described." Each deed provided that "[t]he State of Colorado shall have the right hereunder to adopt and improve as a State Highway the whole or any part of the right of way hereby granted," and was duly recorded in the real property records of Gilpin County.

In 1938 and 1939, Black Hawk passed two resolutions affecting parcel 14. The resolutions acknowledged the development of SH 119 and expressed support for and coopera-tion in that development. In the first, Black Hawk resolved to grant the County a right-of-way through "any property necessary for the construction of the so called: Peak to Peak Highway." In the second, Black Hawk declared all city streets that "formed necessary or convenient links for carrying State Highway No. 119" to be part of SH 119. The State's chief highway engineer signed the second resolution, which bound the parties and their successors in interest. (The second resolution was not, however, recorded until 1993.)

Subsequently, the State constructed, as part of SH 119, a 24–foot wide paved road over parcels 6, 6A, 6B, 14, and 16.

In 1949, the County obtained, via a trea-surer's deed, title in fee to parcels 6, 6A, 6B, and 16, subject to the provisions of the 1939 right-of-way deeds; and, in 1968, it obtained title to parcel 14 via a quitclaim deed from Black Hawk. As mentioned earlier, First Place purchased these properties from the County; First Place backed up its interest in these properties by purchasing a bargain and sale deed from Eugene Mines, Inc. with respect to any interest claimed by that company.

In the eminent domain proceedings, peti-tioners asserted that, because of CDOT's right-of-way, they should not have to com-pensate First Place for the proposed use of parcels 6, 6A, 6B, 14, and 16. In the course of a two-day hearing, the trial court heard evidence on the meaning of the 1939 deeds; CDOT's historical lack of interest in expand-ing the highway to the north; CDOT's acqui-escence in the County's conveyance of other property within the right-of-way; CDOT's accommodation of those conveyances by exe-cuting quitclaim deeds to and boundary agreements for the new owners (including, in one instance, Russell Brown, the manager of First Place); and a conversation between a CDOT representative and the County man-ager concerning the property at issue in this case.

Ultimately, the trial court concluded that First Place owned the property, free and clear of any interest asserted by CDOT and that, in any event, CDOT was estopped from

asserting any ownership interest in the disputed property. More specifically, the court found that (1) "the State acquired no rights under the 1939 deeds that the County did not opt to extend to the State," because the deeds granted easement rights exclusively to the County; (2) the "two Black Hawk Resolutions ... do not support any ownership rights in CDOT," because, besides not purporting to convey property, not containing any legal description of property, and dealing only with "connecting links" to SH 119, they convey an interest, if at all, only to the County, and not to the State; (3) the only portion of the right-of-way that the County allowed the State to "adopt and improve" was the portion of the highway which was actually built upon and used for highway purposes; (4) the easement interest upon which CDOT relied merged with the greater fee interest obtained by the County in 1949, or at the latest, 1968; (5) "by conveying the subject property to First Place [in 1999], the County abandoned [its] right-of-way for road or highway purposes"; and (6) "[e]ven if CDOT had some right or interest in the subject properties that could not be extinguished by the conveyance to First Place," because of its actions and representations, CDOT is estopped under a promissory estoppel theory from asserting such rights.

Consequently, the trial court determined that First Place was entitled to receive full and fair compensation for the taking of the property in dispute. Thereafter, a three-person commission determined that the market value of the property taken and damages to the residue was $4,057,013, and the trial court entered judgment accordingly.

■ On appeal, we accept the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record. *See Tiger v. Anderson,* 976 P.2d 308, 310–11 (Colo.App.1998). We review de novo the trial court's application of legal principles to the facts. *See People v. Richardson,* 58 P.3d 1039, 1048 (Colo.App.2002).

### I. CDOT's Interest in the Property

■ Petitioners first contend that the trial court erred in not recognizing that the 1939 deeds and the two Black Hawk resolutions gave CDOT an independently enforceable interest in the property. We agree.

■ The interpretation of a written document presents a question of law subject to de novo appellate review. In construing a deed, a court's primary purpose is to determine the intent of the parties, which must be done by reviewing the deed as a whole, and not isolated sentences or clauses within the deed. *Bolser v. Bd. of Comm'rs,* 100 P.3d 51, 53 (Colo.App.2004).

■ "A person named in the granting clause of the deed as the sole [ ] grantee, must be so held, unless other provisions in the deed clearly express an intent to the contrary, so as to write effectually into such granting clause the names of other persons as cograntees." *Raber v. Lohr,* 163 Colo. 485, 490, 431 P.2d 770, 773 (1967)(quoting 26 C.J.S. *Deeds* § 99); *see Michael J. Uhes, Ph.D., P.C., Profit Sharing Plan & Trust v. Blake,* 892 P.2d 439, 441 (Colo.App. 1995)(deeds can create easements in favor of third parties).

Here, in the 1939 deeds, the landowners "grant[ed] and convey[ed] to the County of Gilpin, State of Colorado, the right of way and incidents thereto for said public highway over and across the following described land[s] and premises." (As evident from the titles of the deeds, the "said public highway" to which the landowners referred was SH 119.) Following the legal description of the properties encumbered, the landowners provided, "The State of Colorado shall have the right hereunder to adopt and improve as a State Highway the whole or any part of the right of way hereby granted."

By the language used, the grantors of the deeds manifested their unequivocal intent to make the State of Colorado the beneficiary of the easement. Further, by using a mandatory ("shall"), as opposed to a permissive ("may"), term, they manifested their intent that the State's ability to use the easement for highway purposes not depend on County permission to do so. *See Bolser v. Bd. of Comm'rs, supra,* 100 P.3d at 52 (viewing similar deed as "grant[ing] to Gilpin County an easement for highway purposes *and* grant[ing] to the State of Colorado the right

to adopt and improve the easement as a State Highway")(emphasis added). Interpreting the deed in a common sense manner, we conclude that the State was, in effect, a cograntee of the right-of-way easement provided in the deeds. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo.1998)(an easement is a right conferred by grant authorizing one to do or maintain something on the land of another); 2 Restatement (Third) of Prop.: Servitudes § 8.1 (2000)("A person who holds the benefit of a servitude ... has a legal right to enforce the servitude.").

Further, the 1939 deeds, plus the State Highway Advisory Board's resolution accepting them, also constituted statutory dedications of a right-of-way to the State. *See* C.S.A.1935, ch. 143 § 108 ("[n]o highway or part of the same that has not been designated and accepted under the provisions of this article as a state highway shall become such until by a proper resolution it shall have been specifically designated and accepted by the board as a state highway"). Similarly, the Black Hawk resolutions, although in one instance not recorded, and in another instance belatedly recorded, together with the actions of the State Department of Highways (CDOT's predecessor) in accepting them, sufficed as a common law dedication of parcel 14 to the State for highway purposes. *See Bd. of Comm'rs v. Warneke*, 85 Colo. 388, 395, 276 P. 671, 673 (1929).

■ Thus, independent of the County, CDOT had an enforceable interest in the disputed property. And CDOT's interest was not extinguished or merged into the County's when the County otherwise obtained title to the underlying property in 1949 and 1968: "an easement will not terminate by merger if others own outstanding interests in the dominant or servient estates." *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 747 (Colo. App.2002); *see Will v. Gates*, 89 N.Y.2d 778, 658 N.Y.S.2d 900, 903, 680 N.E.2d 1197, 1200 (1997)("The easement rights of [dominant] owners cannot be extinguished by a conveyance to which they are not a party.").

■ Nor was the State's right-of-way limited only to the portion of the property it originally paved as SH 119. When, as here, the State builds a highway, and in doing so creates steep highway clearance rock cuts, or a "cut slope," such that the highway can pass through mountainous terrain, the cut slope is an integral part of the highway to which it is adjacent. *Medina v. State*, 35 P.3d 443, 460 (Colo.2001); *cf.* § 43–1–203, C.R.S.2005 (defining a highway to include "bridges on the roadway and culverts, sluices, drains, ditches, waterways, embankments, retaining walls, trees, shrubs, and fences along or upon the same and within the right-of-way").

> Where a right-of-way of specified width has been dedicated to public use pursuant to legislative authority, it is not required that the entire width be at all times put to public use in order to preserve the unused portion from being lost from the dedication. So long as some portion of the dedicated right-of-way has been used and so long as there is no affirmative evidence that the county commissioners intended to abandon the unused portion, there cannot have been abandonment of a portion of the right-of-way simply because the public need has not yet required the use of the full [width].

*Bd. of County Comm'rs v. Wilcox*, 35 Colo. App. 215, 219, 533 P.2d 50, 52 (1975).

Here, the trial court did not find that CDOT abandoned its right-of-way over the disputed property. Under § 43–2–303(2)(d), C.R.S.2005, no state highway may be vacated or abandoned without a formal resolution from the transportation commission. No such resolution was passed.

■ The record also does not reveal common law abandonment by CDOT. Common law abandonment must be established by clear, unequivocal, and decisive evidence, *Rivera v. Queree*, 145 Colo. 146, 149–50, 358 P.2d 40, 42 (1960), of affirmative acts on the part of the owner of the easement manifesting an intention to abandon the easement. *Gjovig v. Spino*, 701 P.2d 1267, 1269 (Colo. App.1985); *see Turnbaugh v. Chapman*, 68 P.3d 570, 573 (Colo.App.2003) ("Improvement and maintenance by the county is not required for a road to retain its status as a public highway."); *Westland Nursing Home,*

*Inc. v. Benson,* 33 Colo.App. 245, 250, 517 P.2d 862, 866 (1974)("[M]ere nonuse of an easement acquired by grant, however long continued, does not constitute an abandonment.").

Here, because the evidence shows CDOT occasionally, at least, used parts of the disputed property for maintenance, cut slope purposes, and rock fall mitigation, there could be no finding of common law abandonment. *Cf. Bockstiegel v. Bd. of County Comm'rs,* 97 P.3d 324, 332 (Colo.App.2004)(construction of an alternative route, in addition to nonuse, reflects an intent to abandon by an official act; occasional use of a public road for access purposes, in the absence of an alternative road, precludes a finding of abandonment).

Further, contrary to First Place's assertion, CDOT's acquiescence in the County's decision to sell other pieces of property along the right-of-way cannot be used to support an intent on CDOT's part to abandon the property at issue in this case. *See Alexander v. McClellan,* 56 P.3d 102, 105 (Colo.App.2002)(county's vacation of road north of the property not evidence of intent to vacate road on the south side of the same property).

Consequently, we conclude that CDOT's right-of-way was not dependent on permission from the County, did not merge into the County's interest as a result of the 1949 or 1968 conveyances, could not be abandoned by the County, and was not abandoned by CDOT. Thus, CDOT's right-of-way was enforceable unless, as found by the trial court, CDOT was estopped from asserting its interest in the right-of-way against First Place.

## II. Promissory Estoppel

■ CDOT contends that the trial court erred in determining that it was estopped, under a promissory estoppel theory, from asserting its rights against First Place. We agree.

■ Promissory estoppel is an extension of the basic contract principle that "one who makes promises must be required to keep them." *Bd. of County Comm'rs v. DeLozier,* 917 P.2d 714, 716 (Colo.1996). Prom-

issory estoppel may be asserted against a public entity. *Bd. of County Comm'rs v. DeLozier, supra,* 917 P.2d at 716–17.

■ The elements of a promissory estoppel claim are (1) the promisor made a promise to the promisee; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice. *Patzer v. City of Loveland,* 80 P.3d 908, 912 (Colo.App.2003).

Here, in finding that CDOT was estopped from asserting a claim in the property, the trial court reasoned:

> Russell Brown, as Manager of First Place, relied upon numerous representations and statements made by CDOT representatives over time, including the Attorney General's office itself, in deciding to go forward with the acquisition of the subject property in December of 1999, for which a total of $758,500 was paid. CDOT should have known that its representations in repeatedly questioning its ownership rights to this property and its probable lack of success should a quiet title action be brought to test its rights, and in agreeing to relinquish and convey away rights in the immediate area of the subject properties pursuant to various quit claim deeds and boundary agreements, would induce First Place to go forward with the real estate transaction in this case. . . .
>
> . . . Moreover, in entering into the conveyance, First Place relied upon specific representations made by CDOT that it either had no defensible claim to the property, no interest in using the property for highway purposes, or both. These assertions establish a classic case of promissory estoppel against CDOT.

Initially, we fail to perceive how doubts about one's interest in property can be transmuted into promises not to assert that interest if necessary. Further, most of those expressions occurred prior to Brown's 1998 letter in which he acknowledged that CDOT was claiming a right-of-way over the property. Brown's statement, in that letter, to the

effect that he "would deal" with CDOT "after closing," dispels any notion that he considered previously expressed doubts or actions as a promise on CDOT's part not to claim an interest in the property.

Similarly, CDOT's acquiescence in and accommodation of conveyances of other nearby property cannot be viewed as a promise to treat the property at issue here in a similar manner. While such acts may have given First Place reason to hope that its property would receive similar treatment, a hope—even an expectation—is different in kind from a promise. *See Bd. of County Comm'rs v. DeLozier, supra* (doctrine of promissory estoppel is applicable to promises).

Indeed, Brown did not testify that CDOT ever promised him that it would waive any right it had in the property.

Nonetheless, First Place relies on CDOT's representations to the County Manager as effectuating a promise with respect to the property. The trial court recounted CDOT's representations, in this regard, as not caring about and having no objections to the County's conveyance of the property to First Place. However, a review of the County Manager's testimony, which the trial court credited, reveals that (1) she discussed with a CDOT representative that the County was contemplating conveying the right-of-way over the property; (2) the CDOT representative expressed *no concerns* about going forward with the conveyance other than to say that "if [CDOT] needed" (or cared about) "the right-of-way [CDOT] would let [the County] know"; and (3) she did not discuss her phone calls with CDOT with Brown and acknowledged that Brown was advised by the County to contact CDOT directly.

Unlike the trial court, we do not consider the rather conditional statement of CDOT's representative—which was not reported to Brown before he purchased the property—as a promise not to assert an interest in the property if and when the need arose, much less as a promise to Brown. *See Hoyt v. Target Stores,* 981 P.2d 188, 194 (Colo.App.1998)(quoting *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir.1994): " 'mere vague assurances' are unenforceable"); *Soderlun v. Pub. Serv. Co.,* 944 P.2d 616, 620 (Colo.App.1997)(alleged promise, asserted as the basis for a claim of promissory estoppel, must be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms"); *see also Hansen v. GAB Bus. Servs., Inc.,* 876 P.2d 112, 114 (Colo.App.1994) (promissory estoppel is predicated upon a showing of a clear and unambiguous promise that was reasonably relied on; reliance on perceived promise is not sufficient).

 Further, even if the statement were to be considered a promise, we could not conclude that any reliance upon it by Brown was justifiable. "[A]s a general rule, those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law." *Emery Mining Corp. v. Sec'y of Labor,* 744 F.2d 1411, 1416 (10th Cir.1984).

Here, as pointed out above, vacation and abandonment of a state highway are controlled by statute and require specific action by CDOT. Further, a representative of CDOT cannot unilaterally bind CDOT. *See* § 43–1–106(11), C.R.S.2005. In light of these provisions, it was not reasonable for First Place to believe that a CDOT representative could verbally waive or disclaim CDOT's interest in real property. *Cf. Friends of Black Forest Reg'l Park, Inc. v. Bd. of County Comm'rs,* 80 P.3d 871, 879 (Colo.App.2003)(statements of county representative cannot convey or create an adverse interest in county-owned property).

For these reasons, we conclude that, as a matter of law, the facts found by the trial court do not support the application of the doctrine of promissory estoppel to preclude CDOT from asserting its interest in the property. Thus, the trial court erred in ruling that petitioners had to compensate First Place for the use of CDOT's right-of-way. The judgment must be reversed and the matter remanded to redetermine First Place's damages.

In this regard, first place argues that it is entitled to be compensated for the value of its residual fee interest in the property underlying CDOT's right-of-way. Where, how-

ever, "land already subject to a highway easement is taken for highway purpose ... only nominal damages may be recovered." See 5 Julius L. Sackman, Nichols on Eminent Domain § 16.02[7], at 16-24 (rev. 3d ed. 2005)(recognizing this as the rule in the great majority of jurisdictions that have considered the issue).

First Place is also to be awarded damages for CDOT's use of other land, namely, parcel SE-3, over which CDOT has no right-of-way.

### III. Valuation Issues

In light of our disposition, we need not resolve petitioners' contentions regarding the valuation of parcels 6, 6A, 6B, 14, and 16.

The judgment is reversed, and the case is remanded for further proceedings to award First Place (1) nominal damages for injury to its residual fee interest in the property underlying CDOT's right-of-way on parcels 6, 6A, 6B, 14, and 16; and (2) damages for CDOT's use of parcel SE-3.

Judge MÁRQUEZ and Judge ROMÁN concur.