Mary Lee **SHERON**, an individual, Plaintiff–Appellee and Cross–Appellant,

v.

**LUTHERAN MEDICAL CENTER**, a Colorado corporation, West Pines at Lutheran Medical Center, and Janice M. Vernon, an individual, Defendants–Appellants and Cross–Appellees.

No. 98CA2176.

Colorado Court of Appeals, Div. A.

July 20, 2000.

Certiorari Granted Feb. 26, 2001.*

* Justice BENDER would GRANT as to the following issue:

Whether it was error for the trial court to instruct the jury to evaluate the conduct of the defendant, an unlicensed mental health provider, by applying the standards of reasonable "practicing psychiatric specialists," where the term "psychiatric specialist" was undefined, was never used at trial, was not the subject of any expert's testimony, and, if anything, suggested that the defendant was to be held to the standards of a physician specializing in psychiatry.

Miller & Harrison, LLC, Robert Miller, Joan Clifford, Boulder, Colorado; Law Offices of Steven Taffet, Steven Taffet, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Richman & Jones, P.C., Alan Richman, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge PIERCE.**

In this negligence action, defendants, Lutheran Medical Center (Lutheran), West Pines at Lutheran Medical Center (West Pines), and Janice M. Vernon (Vernon), appeal a judgment entered on a jury verdict in favor of plaintiff, Mary Lee Sheron. Plaintiff cross-appeals certain rulings of the trial court. We affirm.

Plaintiff's husband, John C. Sheron, (Sheron) was transported to Lutheran's emergency room after ingesting a large quantity of prescription sleeping pills. There, the emergency room staff treated Sheron for the overdose, and while being treated, he acknowledged that he had taken the pills with the intent to commit suicide and that he also had thoughts of shooting himself.

After Sheron's medical condition was stabilized, Lutheran arranged for a psychiatric evaluation and suicide risk assessment to be conducted by West Pines, a Lutheran subsidiary that provides mental health services to Lutheran patients.

West Pines sent its employee, Vernon, an Assessment and Referral Team clinician, to conduct the evaluation. Vernon performed her evaluation and concluded that Sheron was not "imminently dangerous" to himself and that he could be discharged but should be seen the following day by a "mental health professional." The emergency room physician followed Vernon's recommendation and

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3),

discharged Sheron. The following day Sheron committed suicide.

Plaintiff commenced this action claiming that defendants failed to perform an adequate mental status examination and risk assessment of Sheron. After discovery was substantially completed, plaintiff sought to amend the complaint to add a claim for exemplary damages. The trial court denied that motion.

The matter proceeded to trial at the conclusion of which the jury determined that the defendants were each negligent and that plaintiff incurred damages totaling $1,158,000. However, the trial court subsequently reduced the judgment to $810,600 based upon the jury's finding that Sheron was also negligent and that his negligence constituted 30% of the total negligence.

I.

Defendants first contend that the trial court erred in refusing to give a tendered instruction informing the jury that the emergency room physician who treated Sheron had the exclusive authority to either admit or discharge him from the hospital. We perceive no error.

Initially, we note that contrary to plaintiff's contention, defendants did preserve this argument in the trial court, both by tendering the proposed instruction and by raising this issue at several points during the trial proceedings.

Defendants' proposed instruction read as follows:

When a doctor diagnoses, treats or operates on a patient in a hospital, he is in command of these functions, and the hospital and its employees subserve him in his ministrations to the patient. He has the sole and final control in the matter of diagnosis, treatment and surgery. Possessed of this authority, a doctor's actions are his responsibility.

To the extent this instruction was designed to allow the jury to apportion fault to the

and 24–51–1105, C.R.S.1999.

emergency room physician, it was properly denied because defendants failed to designate the emergency room physician as a responsible non-party pursuant to § 13–21–111.5, C.R.S.1999. *See Thompson v. Colorado & Eastern R.R. Co.,* 852 P.2d 1328 (Colo. App.1993) (a court may not allow the finder of fact to consider the negligence or fault of a nonparty unless such issue has properly been raised by the defendant in a pleading which complies with the requirements of § 13–21–111.5).

On appeal, defendants claim that the instruction was geared toward showing an absence of causation on their part, rather than toward shifting responsibility to the emergency room physician. However, the proposed instruction makes no reference to causation. Instead, it speaks directly to the emergency room physician's "responsibility." We agree with the trial court's determination that: "[D]espite [their] assertion to the contrary, [d]efendants are attempting to shift liability to [the emergency room physician]."

Defendants also argue that the instruction was necessary because plaintiff's case was premised upon the alleged negligence in discharging Sheron from the hospital. This argument mis-characterizes plaintiff's claims. Rather than focusing on the discharge itself, plaintiff more specifically alleged that defendants breached their duty to perform an adequate mental status examination and risk assessment. This duty was separate and independent of the emergency room physician's duty concerning the ultimate decision whether to discharge Sheron.

In our view, the proposed instruction could have confused or misled the jury into believing that the sole duty in the case belonged to the emergency room physician and that, because he had the final decision regarding discharge, defendants were under no duty of care. *See Williams v. Chrysler Insurance Co.,* 928 P.2d 1375 (Colo.App.1996) (an instruction which misleads or confuses the jury amounts to error).

Under these circumstances, we perceive no error in the trial court's decision to refuse the tendered instruction.

## II.

Defendants next contend that the trial court erroneously instructed the jury that Vernon's legal duty was that of a psychiatrist. We perceive no error.

Once again, as an initial matter, we conclude that defendants preserved this contention of error by objecting to the instruction at issue in the trial court.

Contrary to defendants' contention, there is nothing in the evidence, or in the instruction itself, indicating that Vernon was held to the standard of care of a psychiatrist, *i.e.,* a medical doctor. Rather, the instruction stated that Vernon "had a duty to exercise that degree of skill and knowledge ordinarily possessed by practicing psychiatric specialists in arriving at an informed and realistic assessment of the patient's mental condition...."

This language conformed to the evidence in the case which established that Vernon was a psychiatric specialist. Vernon repeatedly described the services she provided as "psychiatric." Indeed, in their reply brief, defendants concede that Vernon was performing "psychiatric services." Also, Vernon described herself as a "psychiatric professional" and testified that she had more training and experience than a "psychiatric technician."

Based upon this evidence, we perceive no error in the trial court's instruction.

## III.

Defendants next contend that the trial court erred in refusing to enter judgment in their favor based upon § 13–21–117, C.R.S.1999. We are not persuaded.

Section 13–21–117 provides, in relevant part, as follows:

No ... mental health professional and no mental health hospital, community mental health center or clinic, institution, or their staff shall be liable for damages in any civil action for failure to warn or protect any person against a mental health patient's violent behavior, nor shall any such person be held civilly liable for failure to predict such violent behavior, except where the patient has communicated to the mental

health care provider a serious threat or imminent physical violence against a specific person or persons.

We disagree with defendants' assertion that the provisions of this statute apply in a wrongful death action based upon alleged negligence in the treatment of a suicidal patient who later does commit suicide. Instead, § 13–21–117 contemplates and describes the duty to protect third persons from a mental health patient's violent behavior. The statute was intended only to codify the common law duty rules of mental health care providers to third parties. *See Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.,* 795 P.2d 1352 (Colo.App.1990) (Criswell, J., specially concurring). It seeks to protect such providers by specifying the steps they can take to fulfill their duty to third parties in those instances in which a duty to warn or to protect exists.

Because § 13–21–117 was not applicable to the facts of this case, the trial court did not err in declining to enter judgment for defendants.

### IV.

We also disagree with defendants' contention that certain statements by plaintiff's counsel require reversal of the judgment and a new trial.

### A.

 Defendants contend that, during the examination of a witness at trial, plaintiff's counsel improperly referenced portions of the Psychiatric Technicians Act (Act), § 12–42–101, et seq., C.R.S.1999. They argue that the Act was inapplicable and that counsel's reference violated an order in limine prohibiting reference thereto.

Initially, we note that the record on appeal does not specifically indicate that the trial court granted defendants' motion in limine seeking to exclude reference to the Act. Thus, the record does not substantiate defendants' claim that plaintiff's counsel's reference to the Act was "in defiance of the trial court's order."

Even if we assume that the trial court did prohibit reference to the Act, we note that, at trial, defense counsel failed to object on that basis. Furthermore, defense counsel essentially invited reference to the Act by asking questions during cross-examination of plaintiff's expert that elicited such a reference. Indeed, when plaintiff's counsel mentioned the Act on re-direct, the trial court overruled defense counsel's objection that the subject was beyond the scope of cross-examination.

Under these circumstances, and based upon the record before us, we perceive no impropriety in counsel's statement at trial.

### B.

 Defendants also contend that plaintiff's counsel made improper comments during closing argument. However, because the appellate record does not include a transcript of closing arguments, we must presume the regularity of the proceedings. *See Brighton School District 27J v. Transamerica Premier Insurance Co.,* 923 P.2d 328 (Colo.App.1996) (burden is on appellant to provide record justifying reversal and absent such a record, we presume the regularity of the trial court proceedings).

### V.

Defendants next contend that there was no evidence to support the jury's award of $5000 representing funeral expenses. We decline to disturb this portion of the verdict.

Here, defendants do not dispute that plaintiff did incur damages for funeral expenses. Furthermore, the jury was aware that Sheron died in Colorado and that the funeral took place in Montana. Under such circumstances, we cannot say that the jury's award of $5000 for this item was so grossly and manifestly excessive as to indicate that it was based upon passion or prejudice so as to require reversal. *See Pyles–Knutzen v. Board of County Commissioners,* 781 P.2d 164 (Colo.App.1989).

### VI.

 In her cross-appeal, plaintiff contends that the trial court erred in allowing the jury

to consider any comparative negligence on the part of Sheron. We disagree.

Section 13–21–111(1), C.R.S.1999, provides that in negligence cases, including wrongful death cases, "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose ... death recovery is made."

Plaintiff does not dispute that the provisions of § 13–21–111(1) apply in this case. Rather, she argues that there was no evidence that Sheron was negligent and that, consequently, the trial court should not have allowed the jury to consider the issue.

To the contrary, here, defendants presented some evidence that would permit the jury to find Sheron was negligent. This included evidence that he was not completely truthful or forthcoming in his statements to both Vernon and the emergency room physician about his intentions. Also, he also failed to keep a follow up mental health appointment the next day, deciding instead to play softball.

■ Nor are we persuaded by plaintiff's argument that comparative negligence principles should not apply in wrongful death suicide cases in which it is alleged that health care providers failed to prevent the suicide. First, such a rule is contrary to the express requirements of § 13–21–111(1). Furthermore, although there is some contrary authority in other jurisdictions, we hold that a patient who is treated by health care providers for suicidal ideations, and who later commits suicide, may be found comparatively negligent or at fault in a subsequent wrongful death action based upon that treatment. See Hobart v. Shin, 185 Ill.2d 283, 235 Ill. Dec. 724, 705 N.E.2d 907 (1998) (contributory negligence of a mentally disturbed person is a question of fact unless the evidence discloses that the person whose actions are being judged is so mentally ill that he is incapable of being negligent); Champagne v. United States, 513 N.W.2d 75 (N.D.1994) (comparison of fault between suicide victim and a defendant who has a duty of medical care toward that victim is generally an issue for the trier of fact).

In our analysis, the blanket rule proposed by plaintiff would ignore the strong policy in Colorado of apportioning fault in tort actions. See § 13–21–111(1) & § 13–21–111.5, C.R.S. 1999. Furthermore, such a rule would fail to account for the nearly limitless different factual scenarios involved in these cases, many of which could well involve some fault by the patient. See Birkner v. Salt Lake County, 771 P.2d 1053 (Utah 1989) (noting that mental impairments and emotional disorders come in infinite degrees and concluding that categorical rule that no patient seeking help for a mental or emotional disorder can be charged with negligence would be unrealistic and cause damage to the principle of comparative negligence).

Because the trial court's decision to allow consideration of Sheron's negligence was supported by Colorado law and by the evidence presented at trial, we perceive no error in that decision.

## VII.

Finally, we also disagree with plaintiff's contention that the trial court erred in excluding her claim for exemplary damages.

Both parties agree that any claim for exemplary damages in this case was governed by § 13–64–302.5, C.R.S.1999. That statute provides that, in cases alleging medical malpractice, a request for exemplary damages may not be included in the initial claim for relief. However, it further provides that, after the parties have substantially completed discovery, a plaintiff may amend the pleadings to assert a claim for exemplary damages provided he or she establishes prima facie proof of a triable issue on the claim. See § 13–64–302.5(3), C.R.S.1999; Evans v. Colorado Permanente Medical Group, P.C., 902 P.2d 867 (Colo.App.1995), rev'd in part on other grounds, 926 P.2d 1218 (Colo.1996).

This, in turn, requires a prima facie showing that the defendant's conduct "was attended by circumstances of fraud, malice, or willful and wanton conduct." See § 13–64–302.5(4), C.R.S.1999. Willful and wanton conduct is conduct purposefully committed which the actor must have realized was dangerous, done heedlessly and recklessly, with-

out regard to consequences, or of the rights and safety of others, particularly the plaintiff. *See* § 13–21–102(1)(b), C.R.S.1999.

Here, plaintiff filed a motion arguing that prima facie evidence existed to support an exemplary damage claim. The trial court apparently took oral argument on the motion and ruled at the conclusion of that argument. However, the appellate record does not contain a transcript of those proceedings. Consequently, we must presume it supports the trial court's decision. *See Brighton School District 27J v. Transamerica Premier Insurance Co., supra.*

After the trial court denied plaintiff's request to amend the complaint, plaintiff filed a "Motion to Supplement Record" containing excerpts from depositions of various witnesses that purportedly established a prima facie showing of facts to support an exemplary damage award. However, our review of these excerpts reveals that, although the witnesses did opine that the evaluation of Sheron was inadequate and below the applicable standard of care, they did not specifically indicate that defendants' conduct was malicious and/or willful and wanton.

In our view, the materials presented amounted to a prima facie showing of negligence only. Consequently, the trial court did not err in denying plaintiff's request to amend the complaint to seek exemplary damages. *See Webster v. Boone,* 992 P.2d 1183 (Colo.App.1999) (conduct that is merely negligent cannot serve as a basis for exemplary damages).

The judgment is affirmed.

Justice ERICKSON *** and Judge SMITH *** concur.

***Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3), and 24–51–1105, C.R.S.1999.