2012 COA 200

**Melanna MARCELLOT,
Plaintiff–Appellant,**

v.

**EXEMPLA, INC., d/b/a Exempla West
Pines, Defendant–Appellee.**

**No. 12CA0233.**

Colorado Court of Appeals,
Div. II.

Nov. 8, 2012.

Law Office of Michael Goodman, PC, Michael Goodman, Englewood, Colorado, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Deanne C. McClung, Mary K. Lanning, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

¶ 1 In this personal injury action, plaintiff, Melanna Marcellot, appeals the judgment of dismissal in favor of defendant, Exempla Inc., doing business as Exempla West Pines, a mental health hospital. She contends that the trial court erred in granting Exempla's C.R.C.P. 12(b)(5) dismissal motion because section 13–21–117, C.R.S.2012, which provides immunity to mental health care providers, does not apply to this action. We disagree and therefore affirm.

## I. Background

¶ 2 The following facts are set forth in Marcellot's complaint, which we accept as true and view in the light most favorable to her. *See Hemmann Mgmt. Servs. v. Mediacell, Inc.,* 176 P.3d 856, 857 (Colo.App.2007).

¶ 3 Marcellot, a psychiatric nursing educator, visited Exempla West Pines with three of her students. Before entering the Psychiatric Intensive Care Unit of the hospital, she asked the nursing staff whether there were any patients who presented a special risk to her safety or that of her students. She received assurance that there were none. However, shortly after entering the unit, a patient assaulted her. Exempla knew that the patient presented a special risk.

## II. Procedural History

¶ 4 Based on this incident, Marcellot commenced this action against Exempla. She asserted that Exempla had been negligent in failing to take reasonable steps to prevent the patient from harming her and in failing

to provide adequate staffing. Marcellot also asserted a claim under the Premises Liability Act, section 13–21–115, C.R.S.2012, contending that, as a landowner, Exempla had a duty to warn an invitee, such as her, of dangers of which it was aware.

¶ 5 Exempla moved to dismiss the general negligence claims, contending that the premises liability statute provided the exclusive remedy for Marcellot. The court granted the motion, and Marcellot has not appealed that determination.

¶ 6 Exempla then moved to dismiss the premises liability claim, asserting that it was immune from liability under section 13–21–117, which provides:

A physician, social worker, psychiatric nurse, psychologist, or other mental health professional and a mental health hospital, community mental health center or clinic, institution, or their staff shall not be liable for damages in any civil action for failure to warn or protect any person against a mental health patient's violent behavior, and any such person shall not be held civilly liable for failure to predict such violent behavior, except where the patient has communicated to the mental health care provider a serious threat of imminent physical violence against a specific person or persons. When there is a duty to warn and protect under the circumstances specified above, the duty shall be discharged by the mental health care provider making reasonable and timely efforts to notify any person or persons specifically threatened, as well as notifying an appropriate law enforcement agency or by taking other appropriate action, including, but not limited to, hospitalizing the patient.... The provisions of this section shall not apply to the negligent release of a mental health patient from any mental health hospital or ward or to the negligent failure to initiate involuntary seventy-two-hour treatment and evaluation after a personal patient evaluation determining that the person appears to have a mental illness and, as a result of the mental illness, appears to be an imminent danger to others.

¶ 7 The trial court agreed with Exempla and dismissed the claim. The court granted Marcellot's later motion asking that the immunity determination be made final pursuant to C.R.C.P. 54(b). This appeal followed.

Marcellot contends the trial court erred in granting Exempla's motion to dismiss based on immunity. We disagree.

### III. Standard of Review

¶ 8 We view with disfavor a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim and uphold a trial court's grant of such a motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Dunlap v. Colo. Springs Cablevision, Inc.*, 829 P.2d 1286, 1291 (Colo. 1992). We review a ruling on such a motion de novo. *Bly v. Story*, 241 P.3d 529, 533 (Colo.2010).

¶ 9 We also review issues of statutory construction de novo. *Smith v. Colo. Motor Vehicle Dealer Bd.*, 200 P.3d 1115, 1116 (Colo.App.2008).

### IV. Conflicting Statutes

¶ 10 Marcellot contends that the Premises Liability Act evinces an intent by the General Assembly that it be the sole statute delineating the obligations and liabilities of landowners in tort, and that its provisions conflict with the immunity provisions contained in section 13–21–117. Because Marcellot did not raise this issue in the trial court, we decline to address it.

¶ 11 We generally will not address for the first time on appeal issues not raised in or decided by the trial court. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008 (Colo.2008). However, an appellate court has the discretion to notice any error appearing of record, even if not presented in the trial court. *Id.* at 1008–09. Such discretion, however, is exercised very rarely in civil cases, typically only where necessary to prevent manifest injustice. *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo.App. 2011); *see also* 9C Charles Alan Wright & Arthur P. Miller, Federal Practice and Procedure § 2558 (3d ed. 2008) (findings of civil plain error under Fed.R.Civ.P. 51(d) "have

been confined to the exceptional case in which the error seriously has affected the fairness, integrity, or public reputation of the trial court's proceedings" and courts routinely characterize the requisite severity of the error as "fundamental" or "miscarriage of justice").

¶ 12 Here, Marcellot acknowledges that she did not raise this issue before the trial court. However, she argues that because she has consistently fought the application of the immunity statute to her case and the issue is purely one of law, we should address the issue. We do not perceive, however, that this assertion suffices to trigger our discretionary review. *See Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 549 (Colo.2006) (appellate court has discretion regarding whether to consider an argument not preserved in a civil case).

¶ 13 Accordingly, we decline to address this contention.

## V.   Statutory Immunity

¶ 14 Marcellot asserts that section 13–21–117 covers affirmative duties to act, but does not protect a mental health care provider from liability where incorrect information is provided in response to a direct question, that is, whether any patient presents special risks. We are not persuaded.

### A.   Law

¶ 15 Our fundamental purpose in interpreting a statute is to give effect to the General Assembly's intent. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo. 1996). To determine legislative intent, we first look to the plain language of the statute. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). If we can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as we presume that the General Assembly meant what it clearly said. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995).

¶ 16 We must look to extrinsic materials, such as legislative history, only when the statute is ambiguous. *Nieto*, 993 P.2d at 500. A statute is ambiguous when the words cho-sen by the legislature are unclear or capable of multiple constructions that can lead to different results. *Id.* at 500–01.

¶ 17 Statutes granting immunity are in derogation of common law and thus must be strictly construed. *Id.* at 506.

### B.   Application

¶ 18 Here, Marcellot claims that Exempla is liable for its failure to warn her of dangers of which it was aware. But section 13–21–117 specifically states that a mental health hospital "shall not be liable for damages in any civil action for failure to warn or protect any person against a mental health patient's violent behavior," unless there has been a specific threat of violence against that third party, a situation not present here. This language is broad and all-encompassing. It applies to "any civil action" for "failure to warn," and we perceive nothing in the statute to support Marcellot's contention that it focuses only on duties to take affirmative action. *See Halverson v. Pikes Peak Family Counseling & Mental Health Ctr., Inc.*, 795 P.2d 1352, 1353 (Colo.App.1990) (Halverson I) (statute contains no words suggesting it is limited to acts of outpatients); *see also Sheron v. Lutheran Med. Ctr.*, 18 P.3d 796, 799 (Colo.App.2000) (§ 13–21–117 contemplates and describes the duty to protect third persons from a mental health patient's violent behavior; it was intended only to codify the common law duty of mental health care providers to third parties, and it seeks to protect such providers by specifying the steps they can take to fulfill their duty to third parties in those instances in which a duty to warn or to protect exists).

¶ 19 Contrary to Marcellot's further contention, we fail to discern how a negligent answer to a question from a third-party visitor concerning any mental health patient's risk to the visitor is different from a failure to warn a third party in the first instance. Indeed, the statute precludes liability not only for failure to warn, but also for failure to protect any person.

¶ 20 We also reject Marcellot's contention that the language of the statute does not encompass the negligent communication by

one mental health provider to another mental health provider. Again, the plain language does not so provide. *See Fredericks v. Jonsson,* 609 F.3d 1096, 1103 (10th Cir.2010) (the limitation on liability under this statute is not confined to the context of a confidential therapeutic relationship).

¶ 21 To the extent that Marcellot asserts the statute is vague and ambiguous, we disagree. At least in the situation involved here, the statute clearly provides for immunity. And in light of that conclusion, we decline to address the legislative history Marcellot proffers in support of her position. *See Nieto,* 993 P.2d at 500 (courts look to extrinsic materials, such as legislative history, only when the statute is ambiguous).

¶ 22 Furthermore, the fact that the legislature expressly provided only two exceptions to the statute's broad reach implies that no other exceptions were intended. *See Henisse v. First Transit, Inc.,* 247 P.3d 577, 580 (Colo.2011) (discussing the doctrine of *expressio unius est exclusio alterius* ).

¶ 23 Marcellot argues that our interpretation creates an absurd result because the statute's plain language indicates, that a mental health provider has a duty to protect the public upon discharging a patient, which is inconsistent with the lack of a duty to protect visitors to the facility where the patient is being treated. We agree that, in interpreting the statute, we must presume that the General Assembly intended a just and reasonable result and must seek to avoid an interpretation that leads to an absurd result. *See Smith v. Zufelt,* 880 P.2d 1178, 1185 (Colo.1994). An interpretation that defeats the legislative intent or leads to an absurd result will not be followed. *Nieto,* 993 P.2d at 505.

¶ 24 Here, however, we do not perceive that our interpretation creates an absurd result. Instead, the statute is meant to broadly protect mental health providers by delineating their duties to third parties, duties that have been specifically determined by the General Assembly to ensure the continued provision of services to mental health patients. *See Sheron,* 18 P.3d at 799.

## VI. Application to Inpatients

¶ 25 Marcellot contends that section 13–21–117 does not apply to inpatients. We disagree. *See Halverson I,* 795 P.2d at 1353 (had the General Assembly intended the statute to apply only to outpatients, it could have used the words "a mental health outpatient's" instead of "a mental health patient's" in defining the scope of the immunity conferred).

¶ 26 To the extent Marcellot relies upon the concurrences in *Halverson I* and in *Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.,* 851 P.2d 233 (Colo.App.1992) (*Halverson II* ), that reliance is misplaced. The facts in both cases related to "patient-on-patient" violence, whereas here, Marcellot was not a patient.

¶ 27 In addition, the General Assembly amended section 13–21–117 in 2006, and did not change the portion of the statute interpreted in the majority opinions in *Halverson I* and *Halverson II. See* Ch. 298, sec. 37, § 13–21–117, 2006 Colo. Sess. Laws 1396. Accordingly, we presume that it agreed with the judicial construction of the statute set forth in the majority opinions. *See People v. Swain,* 959 P.2d 426, 430–31 (Colo.1998) ("Under an established rule of statutory construction, the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction."); *Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."); *Tompkins v. DeLeon,* 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute.").

¶ 28 Marcellot's reliance on *Perreira v. State,* 768 P.2d 1198, 1210 n. 8 (Colo.1989), in support of her argument is misplaced. There, the court noted that section 13–21–117 had been recently enacted but was not yet effective, but stated that it was "instructive at least as to the duty of a psychiatrist in

treating a voluntary outpatient." *Id.* We do not perceive that the court interpreted the statute to apply only to outpatients. Instead, the facts in *Perreira* involved an outpatient; hence, in our view, the quoted language was merely contextual and was not a declaration of statutory interpretation.

¶ 29 Finally, Marcellot notes that the statute provides for fulfillment of the duty to warn, which is imposed when a mental health provider knows of a specific threat, by notifying law enforcement of the threat or by taking action that includes hospitalizing the patient. § 13–21–117. She infers this to mean that the statute applies only to outpatients; otherwise, hospitalization would not be a listed action responding to a specific threat. However, we do not read the statute as implying such a distinction; rather, the statute plainly applies to "a mental health patient."

¶ 30 Furthermore, by prefacing hospitalization with the phrase, "including, but not limited to," the statute makes clear that hospitalization is one, but not the only, possible responsive action. Therefore, it follows that hospitalization is an option for a patient not hospitalized; notifying the authorities or the person who has been threatened is also an option for the already-hospitalized as well as the non-hospitalized patient. The statute itself states only that "appropriate action" must be taken, and does not limit that action to outpatients.

¶ 31 Accordingly, we are not persuaded by Marcellot's argument that the statute applies only to outpatients.

¶ 32 The judgment is affirmed.

Judge BERNARD and Judge BOORAS concur.