Court of Appeals No. 15CA0824
Mesa County District Court No. 09PR151 Honorable David A. Bottger, Judge
In re the Estate of Louise F. Ramstetter, deceased. Florence Marie Ramstetter and Karol Lue Ramstetter, Appellants,
v.
Edrie Jeanne Hostetler,
Appellee.
ORDERS AFFIRMED
Division III
Opinion by JUDGE WEBB
Jones and Booras, JJ., concur
Announced May 19, 2016
Hoskin Farina & Kampf, Professional Corporation, David M. Dodero, Nicholas H. Gower, Grand Junction, Colorado, for Appellants
Poskus, Caton & Klein, P.C., Bernard A. Poskus, Jarod Balson, Denver, Colorado, for Appellee
 
¶ 1       This estate case concerns the interests of three sisters — Edrie Jeanne Hostetler (Jeanne), Florence Marie Ramstetter (Marie), and Karol Lue Ramstetter (Karol) — in a 500-acre tract located in Jefferson County (Ranch).[1] Their late mother, Louise F. Ramstetter (Louise), devised the Ranch to them “in equal shares to be held as joint tenants.” Their dispute arose from the admitted uncertainty of the attorney who drafted the will and — as found by the trial court — the uncertainty of the devisees over how a joint tenancy created by will could be severed.
¶ 2       Marie and Karol appeal:
 an order granting Jeanne’s motion for judgment on the pleadings and dismissing their claim to reform Louise’s will; and
 an order entered following a bench trial declaring, as relevant to this appeal, that an “Agreement and Release” entered into among the sisters was “invalid as a result of mutual mistake,” and that Jeanne had severed the joint tenancy by creating a tenancy in common.
¶ 3       We hold that the trial court properly excluded extrinsic evidence of Louise’s intent in executing the will, as the recently-enacted section 15-11-806, C.R.S. 2015, is not retroactive on these facts. We further hold that the trial court did not err in applying the mutual mistake defense. Accordingly, we affirm.
Background
¶ 4       Louise’s 2008 will devised the Ranch to the sisters “in equal 
shares to be held as joint tenants.” It also designated Marie and Karol as personal representatives if Rose Pugliese, the attorney who had drafted the will, declined appointment. After Louise died in 2009 and Pugliese renounced her appointment, Marie and Karol began administering the estate.
¶ 5       Three years later, Jeanne petitioned to remove Marie and Karol 
as personal representatives.[2] She also sought a declaratory judgment that she had severed the joint tenancy among the sisters, creating a tenancy in common as to her one-third of the Ranch, by deeding her interest to a trust that she had created.
¶ 6        Marie and Karol cross-petitioned to enforce the 2012 Agreement and Release, in which they had agreed to convey thirty-five acres of the Ranch to Jeanne and she had agreed to convey the remainder of her interest in the Ranch to them, with all other claims being released. They amended their cross-petition to seek reformation of the will based on Pugliese’s failure to have implemented Louise’s intent to keep ownership of the Ranch within the family (because Pugliese mistakenly believed that a joint tenancy created by a will could not be severed through the unilateral action of any one joint tenant).
¶ 7        In a detailed written order, the trial court granted Jeanne’s motion for judgment on the pleadings. The court held that the will was unambiguous because the only “reasonable, or for that matter, legal” interpretation was that it conveyed the Ranch “to the named devisees in joint tenancy, which may be severed by any joint tenant.”
¶ 8        Then the court addressed section 15-11-806, effective July 1, 2010, which allows a court to reform even an unambiguous instrument, “to conform the terms to the transferor’s intention,” based on clear and convincing evidence that “the transferor’s intent and the terms of the governing instrument were affected by a mistake of fact or law.” It accepted the parties’ position that application of section 15-11-806 was determined by section 15-17-101(2), C.R.S. 2015, but concluded that section 15-17-101(2) did not make section 15-11-806 applicable because Louise had died before the latter section became effective. This conclusion presents a novel question of statutory interpretation.
¶ 9        Following a four-day hearing on the claim to enforce the Agreement and Release, the trial court entered another lengthy written order addressing Jeanne’s defenses — lack of consideration, rescission, and mutual mistake. The court ruled against Jeanne as to lack of consideration and rescission, rulings that she has not appealed.
¶ 10 After summarizing the evidence, the court found, “as a matter of fact that when they executed the Agreement and Release, Jeanne, Marie and Karol believed that this was the only way the joint tenancy created by Louise’s will could be severed.” On this basis, it declared the Agreement and Release “invalid as a result of mutual mistake among the parties to it.” It also declared that Jeanne had severed the joint tenancy by the conveyance to her trust, and thus, as between Jeanne, on the one hand, and Marie and Karol, on the other, a tenancy in common existed. Whether the Trial Court Properly Excluded Extrinsic Evidence of Louise’s Intent Offered to Reform Her Will
¶ 11      Karol and Marie first contend the trial court improperly dismissed their claim for reformation of Louise’s will. Like the trial court and the parties, we agree that whether to apply section 15-11-806 turns on section 15-17-101(2). Hence, first, we construe section 15-17-101(2). Then we conclude that the trial court properly declined to apply section 15-11-806, although our conclusion does not rest on the date of Louise’s death. See Roque v. Allstate Ins. Co., 2012 COA 10, ¶ 7 (“We can affirm for any reason supported by the record, even reasons not decided by the trial court.”).
Preservation and Standard of Review
¶ 12 Although Jeanne concedes preservation of this issue, she asserts on appeal that we should not consider it because had Marie and Karol expeditiously administered the estate, their reformation claim would have been resolved before the General Assembly enacted section 15-11-806. But Jeanne does not indicate where she raised this assertion in the trial court. See C.A.R. 28(a)(7)(A). Nor have we found a record reference to her assertion. For these reasons, we decline to address it. See Laleh v. Johnson, 2016 COA 4, ¶ 8 (noting that appellate courts “generally do not address unpreserved civil issues”).
¶ 13      “An appellate court reviews a district court’s order granting a judgment on the pleadings based on C.R.C.P. 12(c) de novo.” In re Estate of Johnson, 2012 COA 209, ¶ 18. Likewise, “[t]he interpretation of a statute raises a question of law that we review de novo.” Cain v. People, 2014 CO 49, ¶ 10.
Law
Statutory Framework
¶ 14 Section 15-11-806 amended the probate code by permitting a court to reform the terms of a governing instrument, even if unambiguous, to conform the terms to the transferor’s intention if it is proved by clear and convincing evidence that the transferor’s intent and the terms of the governing instrument were affected by a mistake of fact or law, whether in expression or inducement.
¶ 15 Whether section 15-11-806 applies retroactively is governed by a separate section of that code providing, in pertinent part:

 The code or the amendment applies to governing instruments executed by decedents dying thereafter;
 The code or the amendment applies to any proceedings in court then pending or

thereafter commenced, regardless of the time of the death of decedent, except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this code or any amendment to this code;
. . . .
(e) Any rule of construction or presumption provided in this code or in any amendment to this code applies to governing instruments executed before July 1, 1974, or before the effective date of an amendment to this code, unless there is a clear indication of a contrary intent[.]
15-17-101(2).
Statutory Interpretation
¶ 16 When construing statutes, an appellate court looks first “to the plain meaning of the statutory language, reading words and phrases in context and construing them according to common usage.” People v. Bonvicini, 2016 CO 11, ¶ 12. The court should harmonize, if possible, provisions that could conflict. Colo. Dep’t of Revenue v. Hibbs, 122 P.3d 999, 1004 (Colo. 2005). And it should avoid interpretations that render provisions superfluous. See Kisselman v. Am. Family Mut. Ins. Co., 292 P.3d 964, 969 (Colo. App. 2011).
The Trial Court’s Order
¶ 17 In concluding that Karol and Marie could not present extrinsic evidence of Louise’s intent to support their reformation claim under section 15-11-806, the trial court primarily relied on section 15-17-101(2)(a). The court explained that because Louise had died before the General Assembly enacted section 15-11-806, that provision “is inapplicable to her Will.”
¶ 18 The trial court rejected Karol and Marie’s arguments that section 15-17-101(2)(b) and (2)(e) rendered section 15-11-806 retroactively applicable to their case. Pointing to section 15-17-101(2)(b)’s reference to a “former procedure,” the trial court concluded that subsection (2)(b) only applies to amendments relating to “the procedural provisions of the probate code and not to governing instruments,” like Louise’s will.
¶ 19 Recognizing a potential conflict between section 15-17-101(2)(a) and (2)(b), should a procedural amendment postdate the death of the decedent, the court invoked the canon of construction that a specific statutory provision prevails over a general one, absent a clear intent to the contrary. See, e.g., Freemyer v. Indus. Claim Appeals Office, 32 P.3d 564, 566 (Colo. App. 2000). And the court explained that because subsection (2)(a) applies only to “governing instruments,” this provision is more specific than subsection (2)(b), which applies to “any proceedings in court then pending.” Thus, it concluded that subsection (2)(a) trumps subsection (2)(b), to the extent they might conflict.
¶ 20 As for Karol and Marie’s argument that subsection (2)(e) permits retroactive application independent of subsection (2)(a), the court concluded that section 15-11-806 is not a rule of construction. It explained that “reforming an instrument is different from applying a rule of construction. The latter simply informs a court how to interpret an instrument, while the former allows a court to rewrite it.”
¶ 21 Next, the court rejected their argument that by deeming section 15-11-806 inapplicable, the court rendered section 15-17-101(2)(b) and (2)(e) superfluous. It explained that each subsection concerns a different situation: (2)(a) applies to governing instruments, (2)(b) applies to procedural amendments, and (2)(e) applies to rules of construction. Then the court concluded that applying only subsection (2)(a) to Karol and Marie’s claim “simply confines each provision to its appropriate arena without rendering any of them meaningless.”
¶ 22 Finally, because the reformation claim depended wholly on extrinsic evidence of Louise’s intent, the trial court dismissed it.[3]
Application
¶ 23 Karol and Marie argue that the trial court misinterpreted section 15-17-101(2) in concluding that section 15-11-806 did not apply to their claim. We address and reject their arguments in turn.
Section 15-17-101(2)(a)
¶ 24 The trial court declined to apply section 15-11-806 based primarily on section 15-17-101(2)(a). To be sure, that provision, read in isolation, precludes Karol and Marie from introducing extrinsic evidence on their reformation claim because Louise died before the effective date of section 15-11-806. See § 15-17-101(2)(a) (“The . . . amendment applies to governing instruments executed by decedents dying thereafter[.]”).
¶ 25      But looking only at section 15-17-101(2)(a) to decide the 
retroactive applicability of 15-11-806 to a governing instrument renders section 15-17-101(2)(e) superfluous in cases involving both a governing instrument and an amendment that established a rule of construction. Recall that under the latter provision, an amendment may have retroactive application if it constitutes a rule of construction. See § 15-17-101(2)(e). Thus, were the retroactivity inquiry confined to the date of the testator’s death under section 15-17-101(2)(a), and if the testator’s death predated the amendment, whether the amendment represented a rule of construction would be irrelevant because the date of death would always control.
¶ 26 But an appellate court must interpret statutes to “avoid rendering any part superfluous.” Roalstad v. City of Lafayette, 2015 COA 146, ¶ 42. Thus, we must disagree with the trial court’s interpretation that where a governing instrument exists, the retroactivity inquiry begins and ends with section 15-17-101(2)(a). Instead, we examine all relevant subsections of section 15-17-101(2) to determine whether the amendment to the probate code at issue can be applied retroactively in this case.[4] After doing so, we conclude that it cannot.
Section 15-17-101(2)(b)
¶ 27 Section 15-17-101(2)(b) permits probate code amendments to be applied retroactively in “any proceedings in court then pending or thereafter commenced,” so long as the retroactive application is feasible and does not offend the interests of justice. The phrase “then pending” indicates that the General Assembly intended retroactive application. See Vitetta v. Corrigan, 240 P.3d 322, 326-27 (Colo. App. 2009) (Noting that the new provisions “‘shall apply to civil actions pending on or after’ the effective date.”) (citation omitted).
¶ 28 Even so, the trial court reasoned that section 15-17-101(2)(b) was inapplicable here because it only applied to “former procedures. . . and not to governing instruments.” But the statute does not define “former procedure.” The parties have not cited a case defining this phrase, and we are unaware of a Colorado case doing so. Thus, whether the prior practice of precluding extrinsic evidence regarding a testator’s intent, absent ambiguity, is a “former procedure” remains unclear. Compare State v. Lynch, 969 P.2d 920, 924 (Mont. 1998) (“[Q]uestions concerning evidence admissibility and exclusion typically involve procedural considerations[.]”), with Maurice F. Jones Tr. v. Barnett Banks Tr. Co., 637 N.E.2d 1301, 1304 (Ind. Ct. App. 1994) (noting that “admission of extrinsic evidence to determine a testator’s intent” is a matter of substantive law). And if precluding extrinsic evidence constitutes a “former procedure,” subsections (2)(a) and (2)(b) could conflict where, as here, the governing instrument at issue is a will, the testator’s death predated the enactment of the amendment, and the amendment is arguably procedural.
¶ 29 Be that as it may, we need not resolve this procedure / substance question because, in our view, the trial court’s alternative approach of harmonizing subsections (2)(a) and (2)(b) was correct. Subsection (2)(a) pertains only to proceedings involving governing instruments; by contrast, subsection (2)(b) has no such limitation. Thus, subsection (2)(a) is more specific. And “[i]f different statutory provisions conflict or cannot be harmonized, the specific provision controls over the general provision.” In re Marriage of Rozzi, 190 P.3d 815, 819 (Colo. App. 2008); see also § 2-4-205, C.R.S. 2015.
¶ 30      In sum, even if section 15-11-806 is a “procedural” amendment, section 15-17-101(2)(b) still does not apply here because subsection (2)(a) trumps (2)(b) to the extent that they conflict. Thus, section 15-17-101(2)(b) does not provide a basis for retroactively applying section 15-11-806 here.
Section 15-17-101(2)(e)
¶ 31      As discussed above, if section 15-11-806 is a rule of construction within the meaning of section 15-17-101(2)(e), contrary to the trial court’s conclusion, then section 15-17-101(2)(e) would conflict with section 15-17-101(2)(a) in determining the retroactive application of section 15-11-806.
¶ 32      Subsection (2)(e) contains no “interest of justice” or 
“infeasibility” limitations, such as appear in subsection (2)(b). Instead, subsection (2)(e) is limited only by “a clear indication of a contrary intent[.]” This provision represents the inverse of the typical rule that amendments to statutes apply only prospectively, absent contrary intent. See City of Colorado Springs v. Powell, 156 P.3d 461, 464 (Colo. 2007) (“Absent legislative intent to the contrary, we presume a statute operates prospectively.”). And because the parties do not direct us to any such indicia of contrary intent in section 15-11-806, we must decide whether that section is a rule of construction. We conclude that it is not.
¶ 33 Colorado courts have not determined whether a statute that permits reformation constitutes a rule of construction. True enough, as Karol and Marie point out, our supreme court has concluded that a rule prohibiting extrinsic evidence to interpret an unambiguous will is a rule of construction. See In re Estate of Palizzi, 854 P.2d 1256, 1261 (Colo. 1993). But this answer to the opposite question does not resolve our inquiry because excluding such evidence usually precludes reformation, while section 15-11-806 expressly allows it. Instead, we turn to the ordinary meaning of these terms and out-of-state authority.[5]
¶ 34 The ordinary meanings suggest a distinction between construction and reformation — the former deals with analyzing and explaining, while the latter deals with modifying. Compare Construe, Black’s Law Dictionary (10th ed. 2014) (“To analyze and explain the meaning of (a sentence or passage) . . . .”), with Reformation, Black’s Law Dictionary (10th ed. 2014) (“An equitable remedy by which a court will modify a written agreement to reflect the actual intent of the parties . . . .”).
¶ 35 Consistent with these definitions, most out-of-state authority also suggests that reforming an instrument is distinct from construing it. See Vanguard Telecomms., Inc. v. S. New Eng. Tel. Co., 900 F.2d 645, 651-52 (3d Cir. 1990) (noting that to rule in favor of the plaintiff would require the court “to enlarge [its] role from contract construction to contract reformation”); Hyatt v. Jurczyk, 368 F.2d 546, 547 (1st Cir. 1966) (“[T]o introduce new and totally contradictory language is not construction, but reformation.”); Gordon v. Posner, 790 A.2d 675, 687 (Md. Ct. Spec. App. 2002) (“[W]e are performing interpretation and construction, not reformation.”); In re Matthew Larson Tr. Agreement Dated May 1, 1996, 831 N.W.2d 388, 397 (N.D. 2013) (“Trust reformation cases are inherently different from other interpretation cases [like trust interpretation cases] . . . .”); RHN Corp. v. Veibell, 96 P.3d 935, 945 (Utah 2004) (“[I]t is important to recognize that deed construction is distinct from deed reformation.”); see also 5 Margaret N. Kniffin, Corbin on Contracts § 24.18 (Joseph M. Perillo ed., rev. ed. 1998) (noting that reformation is not a rule of construction).[6]
¶ 36 Karol and Marie rely on a recent statement of the California Supreme Court, “California courts have admitted extrinsic evidence to apply to the construction of a will to accomplish what is arguably or has the effect of reforming a will.” In re Estate of Duke, 352 P.3d 863, 873 (Cal. 2015). But the court did not expressly hold that a rule reforming a will is a rule of construction.
¶ 37 Nor do we read Stillman v. Teachers Insurance & Annuity Association College Retirement Equities Fund, 343 F.3d 1311 (10th Cir. 2003), also cited by Karol and Marie, to support their assertion that section 15-11-806 is a rule of construction. In Stillman, the court concluded that a statute revoking certain revocable dispositions of property upon divorce is a rule of construction. Id. at 1316. Thus, the operation of the statute at issue in Stillman — rendering an action legally ineffective — differs from the express reference to “reform” in section 15-11-806.
¶ 38      Given all this, we conclude that section 15-11-806, which 
permits reformation based on extrinsic evidence of intent, is not a rule of construction. Thus, section 15-17-101(2)(e) does not provide a basis for applying section 15-11-806 retroactively. Because we have also concluded that section 15-17-101(2)(a) and section 15-17-101(2)(b) do not permit retroactive application, the trial court properly precluded Karol and Marie from attempting to reform Louise’s will using extrinsic evidence of her intent under section 15-11-806.
 
Stare Decisis
¶ 39   Still persisting, Karol and Marie assert that the trial court 
improperly invoked stare decisis when dismissing their reformation claim. They argue that section 15-11-806 represents “changed conditions” in Colorado, “abrogat[ing] any common law prohibition of considering extrinsic evidence to reform an unambiguous will.” See People v. Porter, 2015 CO 34, ¶ 23 (permitting courts to depart from prior precedent where the precedent “is no longer sound given changed conditions”).
¶ 40 But the court of appeals is “bound to follow supreme court precedent.” People v. Gladney, 250 P.3d 762, 768 n.3 (Colo. App. 2010). And here, we remain bound by the supreme court’s statement that “[i]f the terms of a will are unambiguous, a court will not admit extrinsic evidence to establish a contrary intent to that expressed by the plain language of the will.” Palizzi, 854 P.2d at 1259. Thus, we reject Karol and Marie’s argument that the trial court improperly invoked stare decisis.
¶ 41 For these reasons, we affirm the trial court’s grant of the motion for judgment on the pleadings and dismissal of their reformation claim.
 
III. Whether the Trial Court Properly Declined to Enforce the Agreement and Release Based on Mutual Mistake
¶ 42 Karol and Marie next contend that in declining to enforce the Agreement and Release because all three sisters were mutually mistaken that only a contract among them could sever the joint tenancy, the trial court misapplied the mutual mistake doctrine. We address and reject each of their arguments in turn.
Preservation and Standard of Review
¶ 43 With one exception, discussed below in Part III.C.3, Jeanne does not dispute preservation of Karol and Marie’s contention that the trial court misapplied the doctrine of mutual mistake.
¶ 44 The existence of a mutual mistake is a question of fact. In re Marriage of Deines, 44 Colo. App. 98, 101, 608 P.2d 375, 377 (1980). An appellate court reviews a trial court’s factual findings for clear error. Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC, 2015 COA 177, ¶ 7. Under this standard, “[w]e must accept the factual findings underlying the decision . . . unless they are ‘so clearly erroneous as not to find support in the record.’” Calvert v. Mayberry, 2016 COA 60, ¶ 40 (citation omitted).
¶ 45 A party asserting mutual mistake bears the burden of proving that defense. See Am. Pride Co-op v. Seewald, 968 P.2d 139, 141 (Colo. App. 1998). And “the preponderance of the evidence standard applies when a party seeks to avoid a transaction on equitable grounds alleging . . . mistake.” In re Marriage of Farr, 228 P.3d 267, 269 (Colo. App. 2010); see also § 13-25-127(1), C.R.S. 2015 (noting that the preponderance of the evidence standard applies “in any civil action”).
Law
¶ 46 A party may be entitled to rescind a contract if all parties labored “under the same erroneous conception of the contract’s terms and conditions.” Casey v. Colo. Higher Educ. Ins. Benefits All. Tr., 2012 COA 134, ¶ 49; see also Restatement (Second) of Contracts § 152(2) (1981) (hereinafter Restatement) (describing the doctrine of mutual mistake). But for this doctrine to apply, the mistake must pertain to a “basic assumption” underlying the contract. Ranch O, LLC v. Colo. Cattlemen’s Agric. Land Tr., 2015 COA 20, ¶ 22 (citation omitted).
¶ 47 Even as to such a basic assumption, however, a party is precluded from asserting mutual mistake if that party “is aware, at the time the contract is made, that [she] has only limited knowledge with respect to the facts to which the mistake relates but treats [her] limited knowledge as sufficient[.]” Restatement § 154(b). In other words, a party who bargains “with conscious uncertainty” cannot defend by raising mutual mistake. Tarrant v. Monson, 619 P.2d 1210, 1211 (Nev. 1980).
Application
Karol’s Mistaken Belief
¶ 48 Karol and Marie first assert that the record does not include any evidence Karol believed the Agreement and Release was the only way to sever the joint tenancy. Thus, they continue, the mutual mistake defense was inapplicable because the record did not show — as it must — that all of the parties held the same mistaken belief.
¶ 49 The trial court did not articulate any basis for its finding that Karol mistakenly believed the joint tenancy could not be severed unilaterally. In this circumstance, an appellate court “is obligated to search the record for evidence to support the findings of fact.” Bockstiegel v. Bd. of Cty. Comm’rs, 97 P.3d 324, 328 (Colo. App. 2004).
¶ 50 Jeanne does not cite testimony directly showing that Karol believed the Agreement and Release was the only way to sever the joint tenancy, nor have we found any. Instead, Jeanne identifies the following evidence as raising the inference that Karol held this belief:
 Pugliese testified that she drafted the Agreement and Release while mistakenly believing that the Agreement and Release was the only way to sever the joint tenancy.
 Karol testified that she relied on Pugliese to guide her in administering Louise’s estate.
 Marie testified that Pugliese relayed the mistaken belief to Marie, and Marie and Karol acted together as co-personal representatives, lived together, and jointly owned real estate.
 Marie told Pugliese in an e-mail that she and Karol would act together to outvote Jeanne on questions regarding Louise’s estate.
¶ 51 But the record also contains evidence undermining this inference. For example, Pugliese testified that she “never communicated” her mistaken belief to “anybody.” Pugliese also testified that she spoke only with Marie about the Agreement and Release, not with Karol. Even Jeanne testified that her mistaken belief was not based on communications with either Marie or Karol.
¶ 52           The trial court’s role is to assess the weight of all the evidence, 
“plus the inferences and conclusions to be drawn therefrom,” Saturn Sys., Inc. v. Militare, 252 P.3d 516, 521 (Colo. App. 2011), as well as “to resolve factual conflicts in the evidence,” Gold Hill Dev. Co., ¶ 7. Thus, we “will not disturb the court’s findings of fact unless they are so clearly erroneous as to find no support in the record.” Saturn Sys., Inc., 252 P.3d at 521; see also Denner Enters., Inc. v. Barone, Inc., 87 P.3d 269, 272 (Colo. App. 2004) (“[W]e must give deference to the trial court’s findings regarding whether a contract exists, even where the evidence is conflicting or admits of more than one inference.”).
¶ 53 While we are unaware of any Colorado cases affirming a trial court’s finding of mutual mistake based solely on inferences rather than direct evidence, other courts have done so. See, e.g., Lunceford v. Houghtlin, 326 S.W.3d 53, 64 (Mo. Ct. App. 2010) (explaining that circumstantial evidence may establish mutual mistake, “provided that the natural and reasonable inferences drawn from it clearly and decidedly prove the alleged mistake”) (citation omitted). And in Colorado, “[c]ircumstantial evidence enjoys the same status as direct evidence.” People in Interest of S.G., 91 P.3d 443, 452 (Colo. App. 2004).
¶ 54 Jeanne’s reliance on Pugliese’s role as advisor to Marie and Karol, their status as co-personal representatives, and their avowed intent to act uniformly all support the inference that Karol also believed the Agreement and Release was the only way to sever the joint tenancy. Thus, the record contains sufficient support for the trial court’s conclusion that Karol held the same mistaken belief as Marie and Jeanne.
Inconsistency in the Trial Court’s Findings
¶ 55 Next, Karol and Marie assert that the trial court’s mutual mistake findings are fatally inconsistent. The trial court found, “as a matter of fact that when they executed the Agreement and Release, Jeanne, Marie and Karol believed that this was the only way the joint tenancy created by Louise’s will could be severed.”
¶ 56 But Karol and Marie identify three other findings that they assert conflict with this finding. And they point out that if a trial court’s findings are materially inconsistent, remand is required. See Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C., 232 P.3d 277, 285 (Colo. App. 2010). We address the allegedly inconsistent findings in turn, but we discern no ground for remand.
Jeanne Understood the Deed Would Sever the Joint Tenancy
¶ 57 According to the trial court’s order, Billie Castle — the attorney who set up the trust and drafted Jeanne’s deed to the trust — testified that “she did not tell Jeanne that this deed would sever the joint tenancy because she was not sure it would . . . , and Jeanne confirmed this testimony. Ms. Castle testified that Jeanne ‘understood that I felt that this would sever the joint tenancy’ . . . .” (Emphasis added.) Based on this excerpt, Karol and Marie assert that the trial court’s findings are irreconcilably inconsistent: Jeanne could not have understood that the deed would sever the joint tenancy while also believing that the Agreement and Release was the only way to do so.
¶ 58 But as Jeanne points out, the trial court did not make a finding as to how Jeanne understood the effect of the deed conveyance; the trial court merely summarized Castle’s testimony. And a testimonial summary is not the same as a factual finding. See Am. Coleman Co. v. Korczak, 190 Colo. 269, 271, 545 P.2d 1360, 1362 (1976) (“The referee merely summarized the testimony with no finding on the issue.”); see also State v. Antone, 770 S.E.2d 128, 130-31 (N.C. Ct. App. 2015) (“We also note that portions of the findings of fact are more recitations of testimony, rather than evidentiary or ultimate findings of fact.”).
Jeanne’s Deed Severed the Joint Tenancy
¶ 59 Next, Karol and Marie assert that the trial court’s finding that Jeanne’s deed to the trust severed the joint tenancy is irreconcilably inconsistent with the finding that Jeanne believed the Agreement and Release was the only way to sever the joint tenancy.
¶ 60 But this assertion conflates the legal effect of the deed — as determined by the trial court years after it had been executed — with Jeanne’s belief when she had Castle prepare the deed that only the Agreement and Release could sever the joint tenancy. The court found that none of the sisters knew the effect of the deed. Thus, Jeanne could have believed — as the trial court found — that the Agreement and Release was the only way to sever the joint tenancy, despite the ultimate effect of the deed. And as the court explained, Jeanne’s entering into the Agreement and Release would have been illogical had she known then that the deed had already severed the joint tenancy.
Jeanne’s Intent in Signing and Recording the Deed Was to Sever the Joint Tenancy
¶ 61 Finally, Karol and Marie assert that Jeanne could not have intended to sever the joint tenancy by the deed to the trust while also believing that the Agreement and Release was the only way to do so.
¶ 62 This argument conflates Jeanne’s intent to sever the joint tenancy with her belief that the deed conveyance would surely effectuate this intent. But Jeanne may have intended to sever the joint tenancy via the deed while still being unsure whether the conveyance would be effective to achieve this intended purpose. And during the three years between this conveyance and entering into the Agreement and Release, Jeanne could have come to believe that only the Agreement and Release would better effectuate her goal.
¶ 63 Because we conclude that the trial court’s findings are not irreconcilably inconsistent, remand is not required. 3. Jeanne’s Mistaken Belief
¶ 64 Lastly, Karol and Marie assert that Jeanne should be precluded from raising the mutual mistake defense because she bargained with conscious uncertainty as to whether the Agreement and Release was the only way to sever the joint tenancy. Jeanne responds that they failed to preserve this precise claim, and “[i]t is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.” Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 18.
¶ 65 In its order denying Karol and Marie’s request for C.R.C.P. 59(b) relief, the trial court said that “this is the first time Movants have argued that Jeanne could not void the agreement based on mutual mistake because she proceeded in ‘conscious ignorance,’ in the language of Restatement § 154.” But a C.R.C.P. 59(b) ruling does not limit the issues on appeal. See Bailey v. Airgas-Intermountain, Inc., 250 P.3d 746, 752 (Colo. App. 2010). And Jeanne cites no authority — nor have we found any in Colorado — holding that an appellate court must defer to a trial court’s ruling on preservation. Thus, we consider de novo whether Karol and Marie preserved this claim, and we conclude that they did not.
¶ 66 Before the trial court, Karol and Marie disputed that Jeanne was mistaken as to the Agreement and Release being the only way to sever the joint tenancy. The court disagreed, finding that Jeanne thought the Agreement and Release was the only way to do so.
¶ 67 But while Karol and Marie sufficiently alerted the trial court to their “no mistake” argument, this argument did not preserve all subsidiary mutual mistake arguments, such as their assertion under Restatement section 154. See, e.g., In re FCC 11-161, 753 F.3d 1015, 1150 (10th Cir. 2014) (raising one argument does not preserve “a much narrower claim”; “Though the two are related, a general challenge does not necessarily implicate a more specific one.”); U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582 F.3d 1131, 1142 (10th Cir. 2009) (“A party does not preserve an issue merely by advancing a related theory before the district court . . . .”); Comm’r of Mental Health & Addiction Servs. v. Saeedi, 71 A.3d 619, 631 (Conn. App. Ct. 2013) (An appellate court will not address a claim unless “distinctly” raised at trial, and a “claim is distinctly raised if it is so stated as to bring to the attention of the court the precise matter on which its decision is being asked.”) (citation omitted).
¶ 68 True enough, “talismanic language” is not required to preserve a claim. Ledroit Law v. Kim, 2015 COA 114, ¶ 48 (citation omitted).And Karol and Marie correctly point out that raising the “sum and substance” of an argument is sufficient to preserve it. Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010).
¶ 69 But they do not provide any record citation where they raised even the sum and substance of their Restatement section 154 argument before their C.R.C.P. 59(b) motion. Their reliance on Berra is also misplaced because the Berra division analyzed whether the substance of a claim asserted during closing argument properly preserved that contention for appellate review. See id. And the sisters waived closing argument.
¶ 70 Karol and Marie counter that “implicit in the trial court’s order” is the conclusion that Jeanne was mistaken about the joint tenancy, despite her uncertainty as to the effect of the earlier deed to her trust, and they assert that they may attack this “implicit” finding. But the trial court expressly found only that Jeanne had been mistaken when she entered into the Agreement and Release. Uncertainty is not implicit in this finding.
¶ 71 Their reliance on First Interstate Bank of Denver, N.A. v. Central Bank & Trust Co. of Denver, 937 P.2d 855, 858 (Colo. App. 1996) (declining to “fragment the res judicata test into separate issues so that failure to emphasize one part precludes argument on the other on appeal”), is unpersuasive. There, the “plaintiff recognized both the jurisdictional and discretionary elements of a res judicata analysis,” yet the plaintiff did not address the discretion issue, concluding that it “need not be reached.” Id. By contrast, Karol and Marie did not alert the trial court to the uncertainty aspect of their mutual mistake argument in any way.[7]
¶ 72 Undaunted, Karol and Marie point out that the trial court cited Restatement section 152 in its order, and Restatement section 152 cross-references Restatement section 154. See Restatement § 152(1) (In the event of a mutual mistake, “the contract is voidable by the adversely affected party unless [she] bears the risk of the mistake under the rule stated in § 154.”) (emphasis added). That the trial court referred to Restatement section 152, though, does not show that it considered Restatement section 154, much less deemed it inapplicable.
¶ 73      In the end, while Crim. P. 52(b) grants appellate courts discretion to notice unpreserved errors affecting substantial rights, it has no civil counterpart. Divisions of this court review unpreserved civil claims “very rarely” and only “where necessary to prevent manifest injustice.” JW Constr. Co. v. Elliott, 253 P.3d 1265, 1271 (Colo. App. 2011) (citation omitted). And we do not perceive that Karol and Marie’s assertion “suffices to trigger our discretionary review.” Marcellot v. Exempla, Inc., 2012 COA 200, ¶ 12.
¶ 74 For these reasons, we decline to address their Restatement section 154 argument.
Conclusion
¶ 75 The trial court’s orders dismissing the reformation claim and voiding the Agreement and Release for mutual mistake are affirmed. JUDGE J. JONES and JUDGE BOORAS concur.
1 The trial court used the parties’ first names in its orders, as do the parties in their appellate briefs.
2 Although the trial court removed them, that decision has not been appealed.
3 On appeal, Karol and Marie do not suggest any basis on which their reformation claim could have proceeded, absent the extrinsic evidence of the testator’s intent that they sought to introduce under section 15-11-806, C.R.S. 2015. As a result, our analysis is limited to this statute, and we do not express any opinion on other circumstances involving an attempt to reform a will with extrinsic evidence.
4 True enough, later we conclude that section 15-11-806 is not a rule of construction within the meaning of section 15-17-101(2)(e), C.R.S. 2015. Even so, interpreting the statute as whole, the potential for conflict between section 15-17-101(2)(a) and 15-17-101(2)(e) precludes the trial court’s outcome-determinative approach to date of death under section 15-17-101(2)(a).
5 The parties do not cite any relevant legislative history on this point, and our review of the legislative history did not reveal anything informative.
6 The two out-of-state cases the trial court cited on this point also show a distinction between reformation and construction. See Williams v. Oldroyd, 581 P.2d 561, 563 (Utah 1978) (“Applying rules of construction, however, does not constitute reformation of a deed.”); Monet v. Merritt, 388 A.2d 366, 368-69 (Vt. 1978) (“The trial court’s findings and conclusions simply indicate a construction of the deed in question and not it’s reformation.”).
7 Their failure to do so is not excused by their assertion that “[i]mplicit in the trial court’s order is its erroneous conclusion that Jeanne was mistaken for purposes of Restatement § 152, despite her uncertainty regarding whether the Joint Tenancy had been severed by the Deed when she entered into the Agreement.” Raising the issue below would have afforded the trial court an opportunity to make explicit what Karol and Marie assert was implicit. And Karol and Marie cite no authority, nor are we aware of any, in which an implicit conclusion invokes the rule that where a trial court addresses an argument, whether that argument was preserved is moot. See People v. Milligan, 77 P.3d 771, 775 (Colo. App. 2003) (“[B]ecause the trial court addressed defendant’s statements and the Miranda issue at the suppression hearing, we conclude the issue was properly preserved for appeal.”).