25CA1659 Peo in Interest of KW 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1659
Jefferson County District Court No. 24JV30076
Honorable Lindsay VanGilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.W., a Child,

and Concerning B.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

Kimberly S. Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Elizabeth A. McClintock, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, B.W. (mother) appeals the judgment terminating her parent-child legal relationship with K.W. (the child).  We affirm.

## I.    Background

¶ 2    The Jefferson County Division of Children, Youth, and Families (Division) opened this case because the child was born exposed to methamphetamine and fentanyl.  Mother's whereabouts were unknown following her departure from the hospital, and the Division served her by publication.

¶ 3    The juvenile court adjudicated the child dependent or neglected.  It also adopted a treatment plan for mother, which required her to address substance use, participate in family time, and meet the child's needs in a safe and stable environment.  Mother, however, never exercised any family time and did not participate in monitored sobriety or demonstrate that she was engaged in substance use treatment during the pendency of the case.

¶ 4    Mother's only appearance occurred virtually at the scheduled termination hearing.  Mother said that she planned to start inpatient treatment and requested a continuance and the

appointment of counsel, which the court granted. Mother later appeared at her first family engagement meeting by video, where she expressed her desire to start family time before beginning treatment.

¶ 5 Around the same time, the Division again moved for termination. The court held a hearing on the motion at which mother's counsel appeared, but mother did not. Following the hearing, the court terminated mother's parental rights under subsections (1)(a) and (1)(c) of section 19-3-604, C.R.S. 2025.

## II. Termination Criteria and Standard of Review

¶ 6 Section 19-3-604 sets forth "three separate bases under which the [juvenile] court may terminate the parent-child legal relationship." *People in Interest of L.M.*, 2018 COA 57M, ¶ 19. Two of those grounds are relevant to this appeal.

¶ 7 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that the child was adjudicated dependent or neglected and has been abandoned by their parent. § 19-3-604(1)(a). As relevant here, abandonment occurs if a parent has (1) surrendered physical custody of the child for six months or more and (2) "not manifested during such period the firm intention

to resume physical custody of the child or to make permanent legal arrangements for" the child's care. § 19-3-604(1)(a)(I).

¶ 8     Another basis for termination is the juvenile court finding, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c).

¶ 9     Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. The credibility of the witnesses and the sufficiency, probative value, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are all within the juvenile court's discretion. *Id.* We review the juvenile court's factual findings for clear error and, thus, will set them aside only if they lack any support in the record. *Id.* at ¶¶ 15, 48. But we review de novo the juvenile court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## III.    Abandonment

¶ 10    Mother contends that the court erred by determining that she abandoned the child.  She does not challenge the court's conclusion that she had surrendered physical custody of the child for at least six months.  *See* § 19-3-604(1)(a)(I).  Rather, she asserts only that the court erroneously concluded that she did not show an intent to resume physical custody or make permanent legal arrangements for the child's care.  *See id.*

¶ 11    The Division disputes preservation because mother did not specifically assert that the elements of abandonment had not been met.  However, mother's attorney asserted in closing argument that mother had actively participated in the latest family engagement meeting and that she was interested in and willing to attend inpatient treatment.  Counsel also asked the court to deny the motion to terminate to give mother more time to show that she could engage in her treatment plan.  Given these general statements, we will treat her argument as preserved.  *Cf. In re Estate of Ramstetter*, 2016 COA 81, ¶ 68 ("[R]aising the 'sum and substance' of an argument is sufficient to preserve it." (citation omitted)).  And regardless of preservation, we discern no error.

¶ 12    Abandonment is primarily a question of intent and may be determined by the parent's actions as well as her words. *People in Interest of A.D.*, 56 P.3d 1246, 1248 (Colo. App. 2002). In determining whether a child has been abandoned, the circumstances must be viewed in light of the child's best interests. *Id.*

¶ 13    Mother concedes that she did not participate in the case "for most of the time it was open." But, relying on her participation in one hearing and one family engagement meeting, she asserts that she did "not demonstrate an intention to abandon [the child]."

¶ 14    True, mother expressed at the family engagement meeting that she wanted to be the child's mother and that she desired to start family time before beginning inpatient treatment. Mother also made similar statements at the hearing, where she expressed her desire to be a part of the child's life. Yet a parent's desire to visit the child and "perhaps someday assume custody" does not amount to a manifestation of a firm intention to resume custody. *Id.* at 1249. Further, a parent's participation in an involuntary termination proceeding, standing alone, is insufficient to preclude termination based on abandonment. *See id.* at 1248.

5

¶ 15    Moreover, the juvenile court found that mother's last contact with the child was at the hospital before the child's discharge and that she did not engage in any family time during the sixteen-month pendency of the case. And it found that mother's whereabouts remained unknown at the time of the termination hearing. While acknowledging testimony about mother's statements at the family engagement meeting, the court nonetheless found that mother "ha[d] not taken any affirmative action to sign the release, set up family time, or attempt to establish any relationship or make arrangements for [the child's] care."

¶ 16    The record supports the court's findings. Mother exercised no family time with the child, including after she voiced her desire for contact toward the end of the case. Mother does not argue in her opening brief that she made permanent arrangements for the child's care, nor does the record reveal that she did so.

¶ 17    Additionally, the caseworker testified that she attempted to reach mother weekly. Throughout the case, the caseworker called mother, texted her, left her voicemails, sent her communications through Facebook, and contacted her relatives for updated contact information. But these efforts resulted only in "some sporadic

6

contact" with mother. And the caseworker's affidavit concerning the Division's efforts to locate mother, admitted at the hearing, indicated that efforts to locate mother had been unsuccessful. *See* § 19-3-603, C.R.S. 2025 (when termination is sought based on abandonment and the parent's location remains unknown, the petitioner shall file an affidavit stating what efforts it made to locate the parent). Lastly, mother did not appear at the termination hearing.

¶ 18    In light of the court's well-supported findings, including mother not having any contact with the child or taking actions to establish a relationship with him, we do not disturb its conclusion that mother abandoned the child. *See S.R.N.J-S.*, ¶ 10; *A.D.*, 56 P.3d at 1248.

IV.    Reasonable Efforts

¶ 19    Mother also asserts that the court erred by determining that the Division had engaged in reasonable efforts.

¶ 20    To determine whether a parent is unfit under section 19-3-604(1)(c)(II), a court considers whether a department made reasonable efforts that have been unable to rehabilitate the parent. § 19-3-604(2)(h); *People in Interest of S.N-V.*, 300 P.3d 911, 915

(Colo. App. 2011). Because we affirm the termination of mother's parental rights under section 19-3-604(1)(a)(I), we do not address whether termination was proper under section 19-3-604(1)(c). *See L.M.*, ¶ 19.

## V. Disposition

¶ 21 The judgment is affirmed.

JUDGE J. JONES and JUDGE LUM concur.